**RIVERSIDE MILITARY ACADEMY, INC., a Georgia Corporation, v. W. E. WATKINS, as Tax Collector for the City of Hollywood, and JAMES P. COO, as Tax Assessor of the City of Hollywood.**

19 So. (2nd) 870                                    June Term, 1944
December 5, 1944                              Special Division B
Rehearing denied December 22, 1945

Ella Jo Stollberg, for appellant.

T. D. Ellis, Jr., for appellees.

THOMAS, J.:

The question in this case for our decision is brought into focus by facts alleged in the bill of complaint which was dismissed upon the defendants' motion.

The appellant, an eleemosynary corporation, sought an injunction relieving it from the payment of taxes for the year 1943. In normal times it operates a military academy and is engaged in no other business. On the property in question there are situated dormitories, barracks, classrooms, athletic fields, and other installations adapted to the mental, moral, and physical training of students.

Continuously from 1931 until May 1942, the property was devoted to educational purposes. Then came Pearl Harbor. Although no formal proceedings to that end were instituted until nearly a year afterward, the government of the United States on 27 May 1942 in furtherance of the war effort took possession of the property and equipment, thereby making it unavailable to the appellant.

Condemnation proceedings were instituted 2 March 1943, and on the same day the District Court of the United States for the Southern District of Florida entertained the petition of the United States of America for a judgment on the "Declaration of Taking" and for an order fixing the date for surrender of possession to the federal government. From the recitals in the Court's order, made a part of the bill, we find that the petitioner estimated $26,000 to be just compensation for the period beginning 27 May 1942 and ending 30 June 1943; that there should be the right to renew the tenure annually for the duration of the war and for one year afterward; that the estate could be terminated upon 60 days'

notice. The court ordered immediate delivery of possession. 40 U.S.C.A., Sec. 258a. In the condemnation suit appellant was awarded $44,000 annual reimbursement, but the government moved for a new trial, so the presently determined compensation is $26,000.

The question, then, is the taxability of the lands for the calendar year 1943. The property was clearly exempt from taxes until 27 May 1942 when it was possessed by the government to meet a national emergency.

It seems appropriate first to review organic law dealing with property exempt, or to be exempted (by the Legislature), from taxation. Under Section 16 of Article XVI property of all corporations is subject to taxation unless held and *used* exclusively for educational, and other, purposes. It will be seen that this portion of the Constitution relates to corporate property and is a mandate operating without aid of legislative enactment. Lummus v. Miami Beach Congregational Church, 142 Fla. 657, 195 So. 607. Section 1 of Article IX, although dealing with the same general subject, is in a different category because its provisions are not restricted to property of corporations and it obligates the legislative body to provide uniform taxation and secure just valuation of all property "excepting such property as may be exempted" by law for educational and other purposes. Thus the Legislature was empowered to specify certain exemptions, and this was done, as will be seen by referring to Section 192.06, Florida Statutes, 1941, and F.S.A. There it is provided, in paragraph (3), that "property of education . . . institutions . . . actually occupied and used by them for the purpose for which they have been . . . organized . . ." shall be exempt.

Summarizing, under Section 16 of Article XVI and under the statute authorized by Section 1 of Article IX property devoted to education is relieved of the tax burden, and it is noteworthy that the predominant word in these provisions is "use"; the utilization of the property is the criterion in determining its liability or non-liability for taxes. Under both sections we have cited the property of appellant was not

subject to tax burden before it was possessed by the government of the United States.

In Section 192.06, paragraph (1), it is also provided that "all property, real or personal, of the United States" is exempt. Between May, 1942, and the day the bill was filed the property had been possessed by the United States, had been held under the judgment entered on the "Declaration of Taking," had been occupied by virtue of condemnation. There is no need, however, to dwell on the taxable status in these three stages, or on the situation existing 1 January 1943. It is patent the *use* was lost by appellant and gained by the federal government, although at first apparently without condemnation, but in any event the appellant and the government were the only ones ever interested during the change. Although it could not be said that on the first day of the tax year (192.04, Florida Statutes, 1941, and F.S.A.) the property was held or used exclusively for educational purposes, it is equally true that it was then in possession of the United States, to the exclusion of appellant. At some point in the metamorphosis it ceased to be appellant's and simultaneously became the government's, although impermanently, and in either category was free from taxation.

We are fully conscious of statutory provisions with reference to rental of property of educational institutions and the application of this income to education, but they have no application here. The use of its property by appellant was interrupted by the federal government, and it was in an adversary proceeding that the compensation was fixed. Such a determination is the very antithesis of a contract where minds meet, parties agree, considerations pass. The yearly reimbursement established by the jury does not even resemble in principle the amount which would be voluntarily paid and received as a result of free bargaining by the parties. This suggests a review of the guarantees of the State and Federal Constitutions.

Under Section 12 of the Declaration of Rights of the Florida Constitution and the Fourteenth Amendment of the Constitution of the United States no person shall be deprived of his property without due process of law. Private property

may not be taken without *full* compensation (Section 29, Article XVI, Florida Constitution) or without *just* compensation (Article V, Amendments to the Constitution of the United States).

The award of the jury, then, represented the *full* or the *just* compensation yearly to be paid for the loss of *use* by appellant. We are unable to see how an item for taxes could have been included when no such expenditure would have been undergone had the use remained in appellant, uninterrupted. If we assume that the amount fixed by the jury was intended to be full and just payment for the deprivation of a use, which by its very nature freed the property of taxes, subsequent imposition of these taxes would result in compensation less than full and just, to the extent of taxes levied.

We conclude that, neither party in the condemnation proceedings being responsible for taxes, the one because of the employment of the property in educational pursuits, the other because of ownership alone, the matter of taxes was not contemplated in the issues or the determination of the jury of the amount to be paid by the plaintiff to the defendant. They could be assessed only on the highly technical theory that on the first of January, 1943, the property could not be said to be "actually occupied and used" for educational purposes, a situation created by the Federal Government when it preempted the property. That would be a literal construction to which the taxing authority is not entitled, even though exemptions by Constitution or statute are construed against the claimant.

Reversed.

BUFORD, C. J., BROWN and ADAMS, JJ., concur.