190 So.2d 771 (1966)
PRESBYTERIAN HOMES of the SYNOD OF FLORIDA, INC., a Non-Profit Corporation of Florida, Appellant,
v.
CITY OF BRADENTON, Manatee County, Florida, a Municipal Corporation, et al., Appellees.
PRESBYTERIAN HOMES OF the SYNOD OF FLORIDA, INC., a Non-Profit Corporation of Florida, Appellant,
v.
MANATEE COUNTY, a Political Subdivision of the State of Florida, et al., Appellees.
Nos. 34232, 34233.
Supreme Court of Florida.
October 5, 1966.
Rehearing Denied November 3, 1966.
*772 Grimes, Grimes, Goebel & Parry, Bradenton, and Black, Cobb, Cole & Crotty, Daytona Beach, for appellant.
William J. Ray, Bradenton, for City of Bradenton.
Kenneth W. Cleary, of Schultz & Cleary, Bradenton, for Manatee County.
PER CURIAM.
These consolidated cases are before us on appeal from the decision of the Circuit Court for Manatee County which held that Bradenton Manor, owned and operated by appellant, a non-profit corporation, as a home for elderly people, is not exempt from taxation under Section 16, Article XVI of the Florida Constitution, F.S.A.
The undisputed facts, as stated in the final decree, are:
"[Bradenton Manor] is a Home where retired elderly people may live in comfort in a Christian atmosphere with a Chapel, Library, Infirmary, Dining Hall and recreational facilities available.
"Founders fees of $5,000.00 per individual or $8,000.00 per couple are charged for those financially able to pay as determined by the Directors. Also those residents financially able to pay, as determined by the Directors, pay for their maintenance amounts ranging from $160.00 to $290.00 per month dependent upon the space occupied. One person receives maintenance free and some 23 others pay varying amounts less than $160.00 and the balance of a total of 156 persons pay full maintenance. There are other facts setting forth the humanitarian functions carried on and it appears the deficits in operation and amoritization [sic] of the mortgage are made up by donations from persons and churches within the Synod."
Upon those facts the Circuit Court concluded the Bradenton Manor property was not held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes within the meaning of Section 16, Article XVI of the Florida Constitution and, therefore, was not exempt from taxation.
The Court rejected appellant's argument that, although the property could not qualify under any one of the separate exemptions, it did qualify through a combination of all the exemptions, and held:
"Since taxation is the rule and exemption is the exception the Court is not inclined to enlarge by construction, nor implication something that neither the Legislature nor the framers of the Constitution have not written in clear and definite terms. It appears that the novel theory of the combined purposes for exemption which is urged upon the Court *773 would if the Court were to grant the exemption be an extension or enlargement of the exemption presently granted by the Constitution and Statutes of the State of Florida, and the Court is unwilling to so rule."
We agree.[1] The decision of the Circuit Court is, therefore, affirmed.
THOMAS, DREW, O'CONNELL and CALDWELL, JJ., concur.
ROBERTS, J., dissents with opinion.
ERVIN, J., dissents with opinion.
THORNAL, C.J., dissents and agrees with ROBERTS and ERVIN, JJ.
ROBERTS, Justice (dissenting).
I respectfully dissent from the view of the majority for the reason that, in my opinion, it is not only erroneous but endangers the tax exempt status of every church-operated college, school or hospital in the state which make any charge for services. One of the great social problems of our day is the responsibility for caring for the physical needs of aged and infirm persons. We know from everyday experience even those with adequate funds have difficulty in finding a suitable place for physical care. It is indeed commendable that church institutions have entered this field and, in my opinion, it violates the letter and spirit of the Constitution of this State to subject the physical properties of the churches or their alter ego non-profit corporations to ad valorem taxes. It is not enough that the residents, where financially able, are requested to pay some part of the expense of their maintenance.
The facts in this case were recited in a rather verbose stipulation which I will not repeat in full, but will incorporate the parts pertinent to this opinion as follows:
"* * * That Plaintiff has no stockholders, and that its directors are annually elected by the Synod of Florida, Presbyterian Church U.S., and that the officers and directors of the corporation are under the control of said Synod and are answerable to it for the performance of their acts and duties. That the Synod of Florida is the highest court or governing body of the Presbyterian Church U.S. in the State of Florida and is composed of one teaching elder and one or more ruling elders from each of its constituent churches in the State of Florida. That the Presbyterian Church U.S. is a large religious organization or denomination of the United States and has been such for over 100 years." * * *
"That the Plaintiff was not organized or operated for profit at any time herein and no part of the net earnings inured to the benefit of any private shareholder or individual.
"The property has not been used or operated by the Plaintiff for any purpose so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, bondholder of the Plaintiff or operator, or any other person through the distribution of profits, payment of excessive charges of compensation or the more advantageous pursuit of their business or profession.
"That the property hereinbefore described is and has been used, held and is dedicated for the purposes all as set forth in the Charter and Amendments thereto as attached to the Bill of Complaint *774 and as amended. That the last amendment to said Charter is attached hereto and made a part of this Stipulation.
"That the Plaintiff has been ruled to be a charitable institution by the Internal Revenue Service of the United States of America and exempt from income taxation and that the status of the Plaintiff under the income tax laws of the United States of America is that of a charitable institution. * * *
"The Plaintiff gives permanent congregate, Christian loving care to elderly persons and provides them with companionship of like individuals, and the Plaintiff is answering and serving a need of the elderly and that generally the permanent care of aged persons confers a benefit on the public; that the number of elderly persons is constantly increasing in the United States and especially in Florida and that the life expectancy of persons is also increasing.
* * * * * *
"The atmosphere and one of the primary purposes of the Manor is religious. Religious services are conducted in the chapel daily except Sunday at the Manor under the supervision of an ordained minister, who is likewise available for spiritual guidance of all members. On Sundays the members are taken in private cars gratuitously by church members of Bradenton to the churches of their choice. Bible study groups also meet at regular intervals for Bible study and instruction. The facilities of the Manor are available to various church groups in the City of Bradenton for their meetings, and its facilities are likewise used by Directors and committees of the corporation for their business meetings in the conduct of the affairs of the Plaintiff. * * *
"That benevolent assistance funds and funds to pay losses incurred in operations are received from the following sources: by annual appropriation from the Synod of Florida, by Mother's Day offerings from the Presbyterian churches of the State of Florida, by donations, by bequests, by use of Founders Fees, by monthly charges for room and board, and use of income from the Presbyterian Homes of the Synod of Florida Foundation. That this Foundation has been established by donors, and that the income from such Foundation is used wholly and exclusively and is specifically designated for use, (1) to reduce the over-all operating cost of like senior citizens' homes operated by the Plaintiff in Florida, and (2) for benevolent assistance to those residents of said homes needing such assistance, and that by virtue of such Foundation the cost of living in the Manor will be reduced to all residents.
"The corporation employs all personnel and actually operates the Manor. That no officer or director of the corporation or other persons at the administrative level, save and except the administrator and assistant administrator of the Manor, receive any salary or compensation for their services." * * *
"That the following religious faiths are represented by residents in the Manor; Presbyterian U.S., Episcopal, Presbyterian U.S.A., Methodist, Congregational, Baptist, Lutheran, Society of Friends, Reformed Church, Unit, Presbyterian Independent, Unitarian, Christian Science, and five with no previous church affiliation." * * *
In my opinion this case is directly on point with Orange County v. Orlando Osteopathic Hospital, 66 So.2d 285, in which this court held that a hospital, even though requiring the patients to pay specified amounts, was exempt from taxation, and in doing so said:
"`The Hospital has a schedule of amounts of deposits for the various types of cases to be treated and when a patient applies he is required to pay the specified amount if he is able or if he is *775 able to pay only a part nevertheless he is received and treated and the hospital accepts the amount he is able to pay. If a patient applies who is unable to pay nevertheless he is accepted and accorded the same treatment and attention as those who do pay. So far as hospital services are concerned, no distinction is made between those patients who are able to pay all or a part of their bill and those who are not able to pay at all.' * * *
"From the facts in the case it is shown that no person or corporation receives profit from the use of the property except the members of the public who apply for its use. Through the facilities of the institution, the corporation offers a type of care and treatment not available in other hospitals in the area. That there is present a substantial charitable use is beyond question. Patients who are unable to pay are received for treatment and receive the same care and attention as those who are able to pay. As to the patients who are able to pay, the evidence is plain that profits received from treatment of such patients go back into the expansion of facilities and services. `A charitable institution does not lose its charitable character and its consequent exemption from taxation merely because recipients of its benefits who are able to pay are required to do so, where funds derived in this manner are devoted to the charitable purposes of the institution.' Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211, 218; Lutheran Hospital Ass'n v. Baker, 40 S.D. 226, 167 N.W. 148; Board of Com'rs of Tulsa County v. Sisters of the Sorrowful Mother, 141 Okla. 32, 283 P. 984; anno. 34 A.L.R. at 637, 62 A.L.R. at 330, and 108 A.L.R. at 286."
And again in Simpson, Tax Collector, Duval County, Florida v. Jones Business College, 118 So.2d 779, this court approved an exemption of the business college which was a private non-profit corporation from ad valorem taxes, and in so doing said: 
"The chancellor also found that respondent has distributed no dividends but that its assets have been used, after paying reasonable salaries and expenses, to improve the school plant and equipment; that respondent is accredited by the Accrediting Commission of Business Schools, an agency recognized as such by the Commissioner of Education, Department of Health, Education and Welfare, Washington, D.C. Completion of certain of respondent's courses of study is accepted by the Florida State Department of Education for teacher accreditation purposes. In our view these findings of the chancellor as approved by the District Court of Appeal would certainly bring respondent within the exemption provided in Section 1, Article IX of the Constitution. The following cases support this view: Strohmeyer v. Rembrandt, 123 Fla. 833, 836, 168 So. 242; Lummus v. Cushman, Fla. 1949, 41 So.2d 895; Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211; Riverside Military Academy v. Watkins, 155 Fla. 283, 19 So.2d 870. See also cases cited in opinion of District Court of Appeal, First District by Wigginton, Acting Chief Judge." (Emphasis added.)
The judicial philosophy expressed in the Orlando Osteopathic and the Jones Business College cases, and the cases to which they are anchored, fits the situation in this case like a glove, and it seems to me the majority view is a complete departure from that established philosophy. It is indeed unfortunate that such an institution (and others similar) will now be subjected to the heavy burden of ad valorem taxation while performing charitable and religious purposes, and which ad valorem taxation must necessarily be borne by either the elderly patients or the Presbyterian Church, or both. I am unable to see the distinction between the case sub judice and a church-operated college which charges *776 tuition, board and room, or a church-operated hospital which charges the customary room, board and other charges. Here the stipulation clearly established that the Presbyterian Homes of the Synod, a non-profit corporation, is the alter ego of the Presbyterian Church and is entitled to all of the exemptions which would be allowed if the title to the facilities were vested in the church rather than the church corporation.
I, therefore, dissent and would hold that the property is entitled to the exemption claimed.
THORNAL, C.J., concurs.
ERVIN, Justice (dissenting).
I fully agree to the dissenting opinion of Justice ROBERTS.
While the Bradenton Manor requires founders' fees and monthly maintenance in varying amounts from those elderly persons cared for in the Manor who are financially able to provide such fees and maintenance, this requirement alone does not nullify the overall religious and charitable attributes of the institution. In addito such fees and maintenance, supplemental donations from members of Presbyterian churches in Florida and from other sources are necessary to enable the Manor to meet the heavy expense entailed in providing for the care and comfort of elderly persons resident in the Manor in an atmosphere congenial to their religious faiths. The Manor, though requiring assistance from such fees, and maintenance, is nevertheless charitable in its overall program and operation and not a profit-making institution. In order to meet its initial capital improvement requirements, for which a large interest-bearing indebtedness was incurred, its sponsors necessarily had to require such payments from residents able to pay. It is thus spreading original costs of getting the institution under way among those now most able to contribute for such purpose. In future years it is to be reasonably expected that as the institution reduces its obligations it will be able to extend its benefits to others less able to pay. These necessary requirements for funding the initial costs of capital improvements in the formative years of the institution in addition to providing for operational expenses should not detract from the Manor's over-all characteristics as a continuing charitable institution, church sponsored, controlled and designed to provide care and comfort to elderly persons in their declining years. Merely because a portion of the expense of charitable and educational institutions must be provided in the form of fees, charges or tuition from those served, the same does not ordinarily defeat the allowance of the ad valorem tax exemption. The simple economics of many institutions which are granted exemptions contemplate that those who are directly served or who are the objects of benefits should contribute in some degree to the costs and expenses entailed in the operation of such institutions.
These expenses of the institution which elderly persons financially able are expected to pay is but one of the factors determinative of the character of the institution. As Justice Roberts so well points out, in the total spectrum this factor is greatly outweighed by other characteristics which clearly align the institution with those institutions and groups which have traditionally been granted ad valorem tax exemption.
Additionally, it appears to me that under our Constitution as it has long been interpreted, to disallow ad valorem tax exemption to the Bradenton Manor is to discriminate against it as a member of a recognized class of institutions and properties which have traditionally been allowed such exemption. The Christian Herald of January, 1966, in an article entitled "Should Church Property be Taxed?" points out *777 out that one of the potent arguments for continued exemption is that:
"* * * since certain other forms of institutional property also are exempt, churches should not be singled out for exclusion; also, by carrying out charitable and welfare activities, churches relieve government of expense and hence should not have to pay."
The article also relates that a Mrs. Madalyn Murray brought suit to nullify church property exemption in the state of Maryland. In dismissing her suit, according to the Christian Herald, the Maryland Circuit Court cited:
"* * * the fact that Maryland also excuses 56 other groups from taxpaying, among them hospitals, fraternal orders, veterans' groups, Boy and Girl Scouts, and a host more. To single out churches, the court ruled, `would indeed be an act of "hostility toward the religious" and would represent "a brooding devotion to the secular" prohibited by the First Amendment.'"
Florida, like Maryland, has long granted the same type of exemptions to similar groups as do most of the states. Unless and until the Constitution is revised and the Legislature prescribes narrower exemption standards and restrictions, I do not believe our Court should bellwether judicially in this field.
I think also that we should note the case of Haines v. St. Petersburg Methodist Home, Inc., 173 So.2d 176, cert. den. 183 So.2d 211. The record presented to us in that case did not clearly establish the nexus between the Church and the home as does the record before us. Moreover, the former case was brought here by "conflict certiorari" rather than direct appeal, and we simply denied certiorari on jurisdictional grounds.
THORNAL, C.J., concurs.
NOTES
[1] Compare,

Hungerford Convalescent Hospital Ass'n v. Osborn, 150 So.2d 230 (Fla. 1963); Miami Battle Creek v. Lummus, 140 Fla. 718, 192 So. 211 (1939), with Haines v. St. Petersburg Methodist Home, Inc., 173 So.2d 176 (Fla.App.2d) cert. denied, Fla., 183 So.2d 211 (1965).