208 So.2d 821 (1968)
O. Sanford JASPER, As Tax Collector of Pinellas County, Florida, Mac S. Haines, As Tax Assessor of Pinellas County, Florida, Fred O. Dickinson, Jr., As Comptroller of the State of Florida, Appellants,
v.
MEASE MANOR, INC., a Florida Non-Stock Non-Profit Corporation, Appellee.
No. 36211.
Supreme Court of Florida.
March 27, 1968.
Rehearing Denied May 3, 1968.
*822 Page S. Jackson and John G. Fletcher, Clearwater, for appellants.
Leonard W. Cooperman, St. Petersburg, for appellee.
Black, Cobb, Cole, Crotty & Sigerson and Thomas T. Cobb, Daytona Beach, for Presbyterian Homes of the Synod of Florida, amicus curiae.
DREW, Justice.
The appellee, Mease Manor, Inc., has been granted a summary final decree holding it is entitled to exemption from ad valorem taxation because the pleadings and exhibits in this cause showed that it met all the tests for exemption of real and personal property used in the operation of its home for the aged as prescribed by Chapter 65-438, Laws of Florida, now F.S. Sec. 192.06(14), F.S.A. This statute provides:
"* * * The following property shall be exempt from taxation: * * *
"(14) All property, real and personal, of any bona fide home for the aged, licensed by the state board of health, owned and operated by a Florida corporation not for profit, and used by such home for the aged for the purposes for which it was organized, and limited to * * * [housing for elderly persons and service personnel, medical, dining, laundry, parking, auditorium and administrative *823 facilities] and other uses essential to the operation of such home for the aged; provided that all income of such home for the aged remaining after payment of the usual and necessary expenses of operation, including the payment of liens and encumbrances upon its property, shall be used exclusively for educational, charitable or scientific purposes including the maintenance, improvement or expansion of its facilities."
Although the decree incorporates extensive findings of fact,[1] these findings are *824 material in this appeal only so far as they reflect compliance with the minimum conditions of the statute, because the conclusion of the court was that appellee's property was entitled to exemption under this law upon proof of those specified facts. The decree holds in effect that, in the absence of any statutory definition of the term "aged," appellee met the requirements for exemption of the property in question by proof of (1) use as a licensed home for persons who are at least 62 years old or whose resident spouse meets that requirement, (2) ownership and operation by a Florida non-profit corporation for purposes and uses essential to the operation of such home, and (3) provisions of its articles of incorporation that any profit above expenses and payment of property encumbrances shall be used, during operation and upon dissolution, for the benefit of guests or expanded facilities and not for other private enrichment.
Appellant's contention, in the trial court and here, is that the statute above construed is invalid because it violates the provisions of the Florida Constitution limiting tax exemption statutes to those for "municipal, education, literary, scientific, religious or charitable purposes," Art. IX, Sec. 1, F.S.A.,[2] and requiring that "the property of all corporations * * * shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes," Art. XVI, Sec. 16.[3]
The latter section has, of course, been considered many times by this Court. We conclude from a study of the decisions, as well as the history and language of this provision in its constitutional context,[4] that *825 the words "shall be subject to taxation" are the precise equivalent of "shall not be exempt from taxation," and the additional language simply excludes the specified classes of property from the preceding injunction so as to permit (but not require) exemption of corporate property used for such purposes. The last clause of this section is therefore merely negative in character, instead of affirmative or self-executing, and contrary pronouncements should stand corrected.[5] The constitutional prescription concerning corporate property differs, then, from the general terms of Article IX, supra, only by expression of the requirement that corporate property be actually "used exclusively" for one of the specified purposes in order to make exemption permissible.
For practical purposes in the present case the two provisions present only the single problem of whether or not the statute, exempting all homes meeting the stated standards, is within the applicable constitutional mandate that property tax exemptions shall not be granted except for charitable purposes (no other constitutional ground for exemption being urged in support of the law).
In response to a preliminary question by appellant, examination of the language of the statute indicates that it was properly construed below to require no showing of an independent charitable purpose or use for potential income which may accrue to the corporate owner other than the purpose served by operation of the home for aged persons, who may, so far as the law requires, be at all times selfsustaining in a financial and functional sense. The statute thus construed clearly constitutes a legislative definition of "charitable" to include operation of a home under the stated conditions for persons who are chronologically aged without regard to dependence or independence otherwise. This, we now conclude, is within the legislative prerogative.
The test for measuring such legislation against the constitutional restraints must be that of reasonable relationship between the specifically described exemption and one of the purposes which the Constitution requires to be served.[6] The problem therefore differs significantly from that which has been presented in cases requiring judicial definition of the constitutional concepts in the absence of an explicit statute. Application in those cases[7] of a more limited definition of charitable use, in the primary sense of relief for the indigent or helpless, does not require or justify rejection of the current statute on constitutional grounds.[8]
*826 Review of similar legislation in other states has prompted recognition of the fact that care of the aged, poor and otherwise, has become a problem of widespread governmental concern.[9] We are unable in this situation to find that the Legislature acted arbitrarily in determining that institutions devoted to such purpose, without profit to others, serve a charitable purpose upon which tax exemption shall be based. The statute was therefore properly sustained.
The decree appealed is predicated upon a finding that respondent complied with all procedural provisions of the law governing applications for tax exemption.[10] This requirement of annual re-examination of exemption status, turning on title and use of the property, has been sustained[11] as a logical means of determining taxability from year to year, and the practice should be of particular value in preventing any abuse or attempt to circumvent the basic purposes of the statute involved in this case.
Affirmed.
ERVIN, J., concurs.
ROBERTS, J., concurs in the opinion and judgment with Opinion.
THORNAL, J., concurs in opinion and also agrees with ROBERTS, J.
THOMAS, J. dissents.
WHITE, Circuit Judge (Retired), dissents with Opinion.
CALDWELL, C.J., dissents and concurs with WHITE, Circuit Judge (Retired).
ROBERTS, Justice (concurring).
I concur in the opinion and judgment for the reasons stated herein and in the dissenting opinions in Presbyterian Homes of Synod of Fla., Inc. v. Bradenton, Fla., 190 So.2d 771.
THORNAL, J., agrees.
WHITE, Circuit Judge (retired) dissenting.
The construction placed on the term "aged" used in Statute 192.06(14) as extending to those "who are at least 62 *827 years old or whose resident spouse meets that requirement," without regard to financial need, or physical or mental infirmity, or a state of senility resulting from advanced age, makes the statute unconstitutional as being outside the purview of the phrase "charitable purpose" used in the Constitution.
CALDWELL, C.J., concurs.
NOTES
[1] "1. That on January 1, 1966 and at all times material to the subject matter of this suit, the following conditions obtained:

(a) The plaintiff, Mease Manor, Inc., was incorporated under the laws of Florida under Chapter 617, F.S., as a not for profit, non-stock corporation, to establish and maintain a home where deserving and aged men and women may be received and cared for in a proper, scientific and benevolent manner. The minimum age established for its residents is 62, excepting spouses of such residents who may be younger.
(b) Under its Articles of Incorporation and all amendments thereto, it is prohibited from issuing shares of stock; or permitting any part of its earnings to inure to the benefit of any individual or corporation, including its members and trustees. It is provided that it shall be conducted as a benevolent, non-profit organization existing and operating for the benefit of its guests and not for the private enrichment, profit or gain of any person or corporation. It is further prohibited from paying dividends or engaging in any transaction which is not in furtherance of the purposes of its organization.
On its dissolution it is prohibited from distributing its assets to any of its members, guests, officers or trustees. Provision is made on its dissolution for the distribution of its assets in accordance with the cy-pres doctrine to another organization having the same charitable and benevolent purposes as Mease Manor, Inc.
It is managed by a Board of Trustees, one of whom is required to be a member of the County Commission of Pinellas County, Florida, and another of whom is required to be either the Mayor of the City of Dunedin or a member of the City Commission of Dunedin.
If any guest, after admission to the home for the aged, is financially unable to pay maintenance fees or any part thereof, such guest shall nevertheless be permitted to remain in the apartment assigned to the guest for the remainder of his life, and is not subject to eviction for failure to pay maintenance fees. It is required that any such indigent guest shall be cared for and maintained as though his or her maintenance fee has been paid regularly and in full.
(c) It owned in the City of Dunedin, Pinellas County, Florida, the following described real and personal property: * * *
It owned, operated and maintained exclusively on said above described real property and with the personal property on the premises, a home for the aged consisting of a multi-story apartment building and allied facilities, which home for the aged was constructed with the proceeds of a loan guaranteed by the Federal Housing Administration pursuant to the terms of Section 231 of the National Housing Act. Said loan was secured by a mortgage of the said premises and certain furniture and equipment therein, which mortgage is now owned by the Federal Housing Administration.
(d) Said home for the aged was licensed by the State Board of Health of Florida.
(e) The home for the aged was owned and operated by Mease Manor, Inc., and used exclusively for the purposes for which Mease Manor, Inc. was organized, that is, viz.:
(i) To provide homes and services for elderly persons.
(ii) To provide housing for personnel of the home, medical facilities, dining facilities, laundries, parking lots, auditoriums, administrative offices and other uses essential to the operation of the said home for the aged.
(f) All of the income from the home for the aged was used for the payment of its usual and necessary expenses of operation, including the payment of liens and encumbrances on its property. It had and has no income in excess of that used for and needed for such usual and necessary expenses of operation, including the payment of liens and encumbrances on its property, and does not expect to have any such excess income in the foreseeable future. If it does have any such excess income the same will be used exclusively for educational, charitable and scientific purposes, including the maintenance, improvement or extension of the facilities as they are now being used.
(g) Mease Manor, Inc. was and is exempt from the payment of taxes to the United States upon the income derived from its operation of its home for the aged.
(h) It provides for its residents additional services and activities to occupy their leisure time, and all of its residents are 62 years of age or older excepting an insignificant number of spouses of such residents who are under the age of 62 years.
(i) It duly and in the time allowed by law applied to the defendant Tax Assessor, Mac S. Haines, to exempt for 1966 its real and personal property used in the operation of its home for the aged from assessment for ad valorem taxes. Its written application for such exemption clearly portrayed its activities and organization as enumerated above. Its application for exemption was denied, and this denial was in effect sustained by the Board of County Commissioners of Pinellas County acting as a Board of Tax Equalization."
[2] Legislature shall provide for a uniform and equal rate of taxation, * * * and shall * * * secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes."
[3] property of all corporations, except the property of a corporation which shall construct a ship or barge canal across the peninsula of Florida, if the Legislature should so enact, whether heretofore or hereafter incorporated, shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes."
[4] In Lummus v. Florida Adirondack School (1934), 123 Fla. 810, 168 So. 232, it is said: "Legislative records disclose that during the years even prior to 1868 the exemption of corporate property from taxation had grown to be somewhat of a menace. Special interests were enjoying exemptions which could not be justified and which if continued would seriously deplete the resources of revenue from ad valorem taxation, which accounts for the inclusion of the provisions of section 24 of article 16 in the Constitution [of 1868] as amended in 1875, and now carried as section 16 of article 16 of the Constitution of 1885." To the same general effect is the statement by Mr. Justice Terrell, in State ex rel. Cragor Co. v. Doss (1942), 150 Fla. 491, 8 So.2d 17, wherein, in speaking of the intent and purpose of Section 16, Article XVI of the Constitution of 1885, he made this observation: "Section Sixteen of Article Sixteen was designed to cover the property of certain corporations for profit which had been enjoying exemptions * * *. This section was first approved in May, 1875, as Section Twenty-four of Article Sixteen of the Constitution of 1868 * * *. It was limited to religious, educational and charitable purposes. It is entirely possible that the property of Masonic Lodges and Woman's Clubs may in cases be covered by Section Sixteen of Article Sixteen but if property held by them is used for no other than the exemptions stated, they could be exempt as provided in Section One of Article Nine [Constitution of 1885] * * *. The property of any charitable or other corporation not for profit could in its taxable aspect be regulated by the Legislature as provided in Section One of Article Nine of the Constitution. * * *" See also Vol. 1, pp. 379 and 477, The Story of Florida by W.T. Cash.
[5] Lummus v. Miami Beach Congregational Church, 142 Fla. 657, 195 So. 607. Cf. Miller v. Doss, Fla. 1950, 46 So.2d 888.
[6] Lummus v. Florida Adirondack School, note 4, supra.
[7] Presbyterian Homes, of Synod of Fla., Inc. v. City of Bradenton, Fla. 1966, 190 So.2d 771; Hungerford Convalescent Hosp. Assn. v. Osborn, Fla. 1963, 150 So.2d 230; Haines v. St. Petersburg Methodist Home, Inc., Fla.App. 1965, 173 So.2d 176, and earlier cases there cited.
[8] Cf. Porter v. Baynard, 1946, 158 Fla. 294, 28 So.2d 890, 894, 170 A.L.R. 747, and State v. City of Tallahassee, 1940, 142 Fla. 476, 195 So. 402, the latter relating to legislative determination of public policy in the definition of other constitutional terms: "The answer to what is a municipal purpose is not static. Each generation may determine its concept of these things." See also State v. Inter-American Center Authority, Fla. 1955, 84 So.2d 9, at p. 16 and 17; and Daytona Beach Paving and Recreational Facilities District v. Paul, Fla. 1965, 179 So.2d 349, 355.
[9] Topeka Presbyterian Manor, Inc. v. Board of County Comm'rs., 195 Kan. 90, 402 P.2d 802; Fredericka Home for the Aged v. San Diego County, 1950, 35 Cal.2d 789, 221 P.2d 268; Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826. The following is from the brief of amicus curiae in the cause now before the Court, quoting the White House Conference on International Cooperation, Reports to the Committee on Social Welfare, pp. 28, 29, Nov. 28-Dec. 1, 1965:

"Twentieth-century advances in medicine and technology have sharply increased the numbers of people who live into old age, not only in the United States, but in most of the world. The increase in the proportion of older people coincides with a steadily diminishing role for them in modern society. Technical development and urbanization afford fewer opportunities for the older segment of society. Modern mobility and massmigration also contribute to the isolation, poverty and lack of place of a good number of old people.
"These dual phenomena of modern times  the gift of longer life and the loss of a role in society for the older people  give rise to one of the most universal of social problems."
[10] F.S. sec. 192.062, F.S.A.
[11] Gamma Phi Chapter of Sigma Chi Building Fund Corporation v. Dade County, Fla. 1967, 199 So.2d 717.