217 So.2d 103 (1968)
The STATE of Florida et al., Appellants,
v.
OCEAN HIGHWAY AND PORT AUTHORITY, Appellee.
No. 37529.
Supreme Court of Florida.
December 13, 1968.
William A. Hallowes, 3rd, State Attorney, for appellants.
Herbert Wm. Fishler, Fernandina Beach, and Bryant, Freeman, Richardson & Watson, Jacksonville, for appellee.
THORNAL, Justice.
We have for review on appeal a decree validating an issue of revenue bonds.
We must decide whether the proposed bond issue constitutes a pledge of the public credit for the benefit of a private enterprise in violation of Fla. Const. art. IX § 10, F.S.A.
The appellee Port Authority was initially created by Ch. 21418, Laws of Florida, 1941. Thereafter Ch. 67-1748, Laws of Florida, 1967, was enacted. It provided in part:
"Section 1. It is hereby found, determined and declared that:
"(a) The continued development of commerce and industry in, economic stability and promotion of the general welfare of Nassau county, Florida, is a *104 joint responsibility of the State of Florida of Nassau county, the Ocean Highway and Port Authority and other political subdivision located within such county.
"(b) The acquisition, extension, expansion, enlargement, construction and equipping by the Ocean Highway and Port Authority of Nassau county, Florida, (hereinafter call `Port Authority') of a Pulp and Paper Mill and related facilities to be leased for operation to a private corporation are in part a discharge of such responsibility and constitute a public purpose for the financing of which revenue obligations of the Port Authority may be issued."
Effectiveness of the 1967 Statute, supra, was conditioned upon its approval by a majority of the qualified electors of Nassau County voting in a referendum on the subject. In an election held November 7, 1967, the Act was approved by a vote of 1,340 for and 493 against.
In the instant matter the Port Authority proposes to issue revenue bonds in the amount of $42,000,000.00 to construct a pulp and paper plant. It is contemplated that the plant will be leased to Container Corporation of America. The rents will be sufficient to liquidate the bonds. There is a specific prohibition against the levy of ad valorem taxes to pay the debt.
The testimony reveals that the pulp and paper industry represents about 38% of the taxable property and produces approximately 60% of the total annual income of residents of Nassau County. The industry employs almost one-half of the total civilian labor force and uses also almost 80% of the total available agricultural acreage in the County. In view of a serious decline in the fishing business formerly the County's other major industry, the survival and expansion of the pulp and paper industry have become matters of dominant importance to the business life and economic survival of the area.
Evidence offered in support of the bond issue adds factual data to sustain the legislative findings contained in Ch. 67-1748, supra. On the basis of this evidence and by giving due weight to the legislative determinations, the circuit judge validated the bonds.
We are asked to reverse the validation decree with the claim that the proposed bond issue does violence to Fla. Const. art. IX, § 10, which reads in part as follows:
"The credit of the State shall not be pledged or loaned to any * * * corporation or association; * * *. The Legislature shall not authorize any county * * * or incorporated district * * to obtain or appropriate money for, or to loan its credit to, any corporation * * or individual."
To support reversal the appellant points to our opinion in: State v. Town of North Miami, 59 So.2d 779 (Fla. 1952); State v. Clay County Development Authority, 140 So.2d 576 (Fla. 1962); State v. Manatee County Port Authority, 193 So.2d 162 (Fla. 1966); and State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967).
We are, therefore, confronted by necessity for a decision as to "whether the public purpose [of the bond issue is] the overriding and paramount purpose * * *." State v. Jacksonville Port Authority, supra. If the evidence, buttressed by the specific legislative findings, compels an affirmative response to this question, then the decree under assault must be affirmed. We have concluded that the expressed leigislative determination characterizing the specific project as one imbued with qualities of public essentiality distinguishes the instant situation from those cited by appellant which lacked such specificity of legislative approval. We are therefore not confined to a judicial evaluation of the facts. The judgment of the circuit judge was given authoritative support by prior legislative action taken within the limits of the constitutional powers of that branch of the government. We do not hold that legislative *105 action can convert black into white. However, in this matter of defining what is or what is not a "public" as distinguished from a "private" purpose, we labor in a "judicial grey zone" where the ultimate judgment may be colored, if not concluded, by definitive legislative pronouncements.
Appropriate respect for the authority of a coordinate branch of the government impels us to accord presumed validity to an act of the Legislature. To disturb it on constitutional grounds invalidity must be demonstrated beyond a reasonable doubt. A legislative decision regarding the public need and welfare of a particular area should not be disturbed unless it can be demonstrated that the conclusion is clearly unwarranted or is prohibited by some express constitutional limitation. It seems to us that this rule of construction achieves weightier persuasion when the legislative decision is given overwhelming endorsement by the electors of the affected area in a referendum called for the purpose. In this posture a particular program or project may well serve a public function in one section which would make little or no contribution to the public welfare if constructed elsewhere. For example, an automobile speedway was held to further the public welfare of a tourist and recreation area, whereas, logically it might perform no such function in a rural agricultural community. State v. Daytona Beach Racing and Recreational Facilities District, 89 So.2d 34 (Fla. 1956); Daytona Beach Racing and Recreational Facilities District v. Paul, 179 So.2d 349 (Fla. 1965). In the first of these cases we observed:
"The enabling act expressly stated its purpose was to further public purposes in promoting the economic, commercial and residential development of the District and the lower court recognized in its decree that such would be done in the proposed development of the District. Since the Legislature determined that public purpose would be served, we should not find to the contrary unless it be found the Legislature was not just and reasonable or was arbitrary."
In the second Daytona Beach case last cited, we repeated:
"As stated many times, this Court should accord the legislative discretion great respect in its designation of those facilities and things which serve public purposes * * *"
As confirmed by the last quoted opinion we have, almost without exception, respected a legislative decision regarding the public qualities of particular projects. In numerous instances a subsequent legislative determination of the legality of the purpose to be served by an undertaking was sufficient to overcome prior judicial decisions categorizing the same type of undertaking otherwise. For example, see Jordan v. Duval County, 68 Fla. 48, 66 So. 298 (1914), as contrasted to State ex rel. Milton v. Dickenson, 44 Fla. 623, 33 So. 514, 60 L.R.A. 539 (1902); also see, State v. Florida State Improvement Commission, 47 So.2d 627 (Fla. 1950), regarding an armory.
Demonstrating the impact of legislative findings on the nature of a particular improvement, see, State ex rel. Gibbs v. Gordon, 138 Fla. 312, 189 So. 437 (1939), a naval air station as a county purpose; State v. City of Tallahassee, 142 Fla. 476, 195 So. 402 (1940), an office building as a municipal purpose; State v. Monroe County, 148 Fla. 111, 3 So.2d 754, (1941), a county airport; Seaboard Airline Railroad Company v. Peters, 43 So.2d 448 (Fla. 1949), Miami International Airport; State v. Daytona Beach Racing and Recreation Facilities District, supra, speedway to be leased to a private enterprise.
We have similarly given weight to legislative findings in construing constitutional provisions other than those governing bond issues. Lainhart v. Catts, 73 Fla. 735, 75 So. 47 (1917). For example, we recently accorded controlling weight to a legislative definition of "educational, charitable or *106 scientific purposes" to support a tax exemption. We followed the legislative definition of a charitable purpose in granting an exemption to a home for the aged although the court had previously denied exemption in an almost identical factual situation which lacked legislative endorsement. See, Jasper et al. v. Mease Manor, Inc., 208 So.2d 821 (Fla. 1968), as contrasted to Presbyterian Homes of Synod of Fla., Inc. v. City of Bradenton, 190 So.2d 771 (Fla. 1966).
In view of the legislative finding in the case before us, as distinguished from those cases which lacked such legislative support, we repeat our observation in Mease Manor, supra:
"The problem therefore differs significantly from that which has been presented in cases requiring judicial definition of the constitutional concepts in the absence of an explicit statute."
To support our full reliance on the legislative findings in Mease Manor, Inc., supra, we relied upon our 1965 decision in Daytona Beach Racing and Recreational Facilities District v. Paul, supra.
We have cited numerous cases where bonds were authorized to finance projects on the authority of legislative determinations regarding the nature of the project. On the other hand, the judicial decision has often been otherwise when the legislative finding is lacking. In the instant case the legislative definition of the public welfare and the evidence which brings the proposal within the limits and purposes of the enactment combine to support the correctness of the decree validating the bonds. It is therefore affirmed.
It is so ordered.
ERVIN, J., and CARLTON and ADKINS, Circuit Judges, concur.
DREW, J., dissents with opinion.
CALDWELL, C.J., and ROBERTS, J., dissent.
DREW, Justice (dissenting).
I dissent. See my dissenting opinion in State v. County of Dade, 210 So.2d 200, text beginning page 204.