316 So.2d 627 (1974)
John W. MIKOS, As Tax Assessor of Sarasota County, Florida, et al., Appellants,
v.
PLYMOUTH HARBOR, INCORPORATED, a Florida Corporation Not for Profit, Appellee.
Nos. 73-925, 75-100, 75-182.
District Court of Appeal of Florida, Second District.
December 13, 1974.
On Rehearing July 18, 1975.
Rehearing Denied August 25, 1975.
*629 J. Geoffrey Pflugner and John C. Dent, Jr., of Ginsburg, Ross, Dent & Byrd, Sarasota, for appellants.
John Patterson, of Icard, Merrill, Cullis, Timm & Furen, Sarasota, for appellee.
GRIMES, Judge.
This case involves the question of whether appellee (Plymouth Harbor) is entitled to ad valorem tax exemption for the year 1972 as the owner and operator of a home for the aged.
Plymouth Harbor is a non-profit corporation holding a valid license as a home for the aged issued by the State Board of Health. It is also a qualified exempt organization under the provisions of Section 501(c) (3) of the Internal Revenue Code. From its inception, Plymouth Harbor has operated to provide elderly persons with housing facilities and services. It has no stockholders and no profits or dividends are distributed to its incorporators, directors, trustees or members. The charter provides that upon dissolution, all assets remaining after payment of costs and expenses must be distributed to charitable organizations.
The properties of Plymouth Harbor were exempt from ad valorem taxation for the years 1968 through 1971. Following the substantial revision of the ad valorem tax exemption laws in 1971 (Chapter 71-133, Laws of Florida), appellant, Tax Assessor of Sarasota County (Assessor), refused to exempt those properties in 1972. After exhausting its administrative remedies, Plymouth Harbor filed suit to obtain an exemption. The complaint was premised upon four theories. Count I asserted generally Plymouth Harbor's claim for exemption on the basis that its property was used for charitable purposes; count II claimed an exemption under Fla. Stat. § 196.197(7) (1971); count III alleged that the Assessor had, in effect, granted the application for exemption by failing to deny it in writing by June 1, 1971, as required by Fla. Stat. § 196.193(5) (1971); and count IV challenged the constitutionality of subparagraphs 1 and 2 of Fla. Stat. § 196.197 (1971). Following discovery, the court entered a summary final judgment granting Plymouth Harbor's claim for relief under Fla. Stat. § 196.197(7) (1971), which both parties have referred to as the "grandfather clause" of Chapter 71-133, Laws of Florida. The court did not pass upon the claims made by Plymouth Harbor in counts I, III and IV of its complaint.
The tortuous path followed by the legislature and our courts in the granting of tax exemptions to homes for the aged must be reviewed in disposing of this case. In Presbyterian Homes v. City of Bradenton, Fla. 1966, 190 So.2d 771, and Haines v. St. Petersburg Methodist Home, Fla.App.2d, 1965, 173 So.2d 176, the courts interpreted Fla. Const., art. XVI, § 16, to mean that a corporate home for the aged was entitled to tax exemption only if it was operated for the exclusive use of the poor or others unable to help themselves. Thereafter, the legislature enacted Fla. Stat. § 192.06(14) (1967), which provided that any bona fide nonprofit home for the aged was entitled to exemption so long as all income after the payment of necessary expenses of operation was used exclusively for educational, charitable or scientific purposes, including the maintenance, improvement or expansion of its facilities. The Supreme Court in Jasper v. Mease Manor, Inc., Fla. 1968, 208 So.2d 821, then held that this statute constituted "a legislative definition of `charitable' to include operation of a home under the stated conditions for persons who are chronologically aged without regard *630 to dependence or independence otherwise." The court said that this was within the legislative prerogative and distinquished its earlier holdings in Presbyterian Homes v. City of Bradenton, supra, and Haines v. St. Petersburg Methodist Home, supra, by pointing out that these earlier cases had required a judicial definition of constitutional concepts in the absence of an explicit statute.
Subsequent to Jasper v. Mease Manor, Inc., supra, the 1968 Constitution became effective, and art. XVI, § 16, of the 1885 Constitution was replaced by art. VII, § 3, so as to liberalize permissible exemptions to include property "predominantly" used for charitable purposes rather than property "exclusively" used for such purposes. Chapter 71-133, Laws of Florida 1971, which became incorporated into Chapter 196, repealed the existing laws on charitable exemptions and replaced them with new laws on the subject. Included in this new legislation were provisions becoming Fla. Stat. § 196.197(1) and (2) (1971), which permitted exemption only to the extent that residency in the home was restricted to persons having a gross income of less than a specified amount. Chapter 71-133 contained the so-called "grandfather clause" which read as follows:
"To the exemption granted under this subsection for the years 1972-73 shall be added the value of the property used as a residence by persons or couples not meeting the exemption requirements of this act, but whose residence agreements contain a provision preventing the home from increasing the monthly residence charge for the payment of ad valorem taxes and which agreements were in effect on June 1, 1971."
The apparent purpose of the grandfather clause was to give homes for the aged who were not caring for low income persons a grace period of two years providing they were contractually prohibited from passing the burden of the taxes on to their residents.
The record reflects that Plymouth Harbor had 276 rental units. There were 183 units rented under contracts in effect on June 1, 1971, which contained the following provision:
"That MEMBER shall during the period of his residency at PLYMOUTH pay the sum of ____ per month in (in-) advance, (ex-)cluding dining service, as and for his proportionate share of the cost of operation of PLYMOUTH and his continued membership, that it is within the discretion of the Board of Trustees of PLYMOUTH to survey annually the costs of the operation of the aforesaid PLYMOUTH with a view to determine the reasonableness of the aforesaid charges, and, in the event that the cost of operation thereof shall be considered to be in excess of the aforesaid charges, the Board of Trustees of PLYMOUTH may increase the monthly sum payable, but such increase shall not in any one (1) year exceed five percent (5%) of the aforesaid charges... ."
Likewise, there were 93 units under contracts in effect on June 1, 1971, which contained a slightly different provision reading as follows:
"That Resident shall, during the period of his residency at PLYMOUTH, pay the sum of _____ per month in advance, plus any and all applicable state and federal taxes, excluding dining service as and for his proportionate share of the costs of operation of PLYMOUTH and his continued residence; that it is within the discretion of the Board of Trustees of PLYMOUTH to survey annually the costs of the operation of the aforesaid PLYMOUTH with a view to determining a reasonableness of the aforesaid charges, and, in the event that the cost of operation thereof shall be considered to be in excess of the aforesaid charges, the Board of Trustees of PLYMOUTH may increase the monthly sum payable, but such increase shall not *631 in any one (1) year exceed five percent (5%) of the aforesaid charges... ." (Emphasis supplied.)
The court below held that both forms of contract prohibited Plymouth Harbor from charging the amount of taxes to its residents. On January 1, 1972, 267 out of the 276 residential units were still occupied by residents whose contracts were in effect on June 1, 1971. Therefore, the court granted Plymouth Harbor a 96.73% exemption from taxation.
When the Assessor appealed from the summary judgment, Plymouth Harbor filed cross assignments of error asserting that the court should have granted a 100% exemption under counts I, III and IV of its complaint. Prior to oral argument, the parties being of the opinion that the summary judgment would not support an appeal as to the issue raised in counts I, III and IV, entered into a stipulation limiting the Assessor's assignments of error to the issue of the applicability of the grandfather clause and withdrawing Plymouth Harbor's cross assignments of error, reserving to themselves the right to argue the issues raise by the other counts in further proceedings below.
The Assessor contends, inter alia, that even if all the Plymouth Harbor contracts met the requirements of the grandfather clause, this only had the effect of eliminating the minimum income requirements of residents prescribed in Fla. Stat. § 196.197(1) and (2) (1971). The Assessor asserts that to be entitled to the exemption, Plymouth must also show that it meets the requirements of Fla. Stat. §§ 196.012(6) and 196.196 (1971), and that the record demonstrated a conflict of fact on these points so as to preclude a summary judgment. The Assessor further argues that even if the grandfather clause exempts Plymouth from all the requirements of Chapter 196, the contracts with its residents were not such as to fall within the provisions of the grandfather clause. Finally, the Assessor suggests that the proportion derived by comparing the number of units exempted by the grandfather clause to the entire number of units in the facility should not be applied against the so-called "common areas" of the facility which are not part of the residential units themselves.
The wording of the grandfather clause leaves much to be desired. At the outset, the word "subsection" is a non sequitur. To make sense, this word would have to read "section," if not "chapter." More significant to this case is whether the legislature meant to say that those contracts meeting the requirements of the grandfather clause obviated the necessity of meeting the exemption requirements of this "chapter." The Assessor argues, with some logic, that the language of the clause suggests that the grandfather clause was only intended to provide a two-year grace period for those residential units occupied by persons not meeting the minimum income requirements of § 196.197(1) and (2). Thus, the Assessor would interpret the word "chapter" to mean "section." However, we believe that the opinion in Presbyterian Homes of Synod of Florida v. Wood, Fla. 1974, 297 So.2d 556, issued since the filing of this appeal, makes the determination of that question moot. In that case, the Supreme Court declared § 196.197(1), (2) and (3) (1973) (substantially those provisions which were formerly § 196.197(1) and (2) (1971)) to be unconstitutional because of their failure to conform with art. VII, § 3, of the Florida Constitution providing exemption for property predominantly used for charitable purposes. The court held that predicating the exemption upon the income of the residents had reference more to the personal economics of the residents rather than the overall purpose or use of the home as a religious or charitable institution. The court went on to say:
"The tests to be applied by taxing authorities and by the courts, if resort is had thereto, in determining whether to allow tax exemption for a home for the *632 aged or disabled after deletion of F.S. Section 196.197(1), (2), (3), F.S.A., are found in the remainder of Chapter 196 and particularly the definitions in F.S. Section 196.012, F.S.A. and the criteria in Section 196.196 in keeping with Section 3(a), Article VII, State Constitution, and the rationale of the cases cited hereinbefore. Particular attention should be given to the holding in Jasper v. Mease Manor and the dissents in Presbyterian Homes v. City of Bradenton. The dissents in the latter case were given a large degree of viability in the later Jasper v. Mease Manor case. If it appears by applying the described tests that a property under investigation is used for exempt purposes in excess of 50 per cent the exemption should be allowed."
In essence, the opinion in Jasper v. Mease Manor, supra, and the dissents in Presbyterian Homes v. City of Bradenton, supra, reflect the philosophy that providing shelter for the aged is such a pressing social problem that it may be considered a charitable purpose even when some of the residents of the home have the means to pay their way. If the balance of Chapter 196 after the deletion of the unconstitutional sections is construed in accordance with the rationale of these cases, we believe the record in the instant case clearly demonstrates that Plymouth Harbor meets the rest of the exemption requirements of the chapter. Therefore, it is unnecessary for us to decide whether the grandfather clause exempts the requirements of the entire chapter or only those portions of the chapter declared to be unconstitutional, because on this record Plymouth Harbor meets the requirements of the balance of the chapter anyway.
At first blush, this determination would appear to resolve the entire case in favor of Plymouth Harbor. Yet, because of the posture of the case and the stipulation of the parties, we have before us only the interpretation of the grandfather clause. It has only been necessary for us to construe Presbyterian Homes of Synod of Florida v. Wood, supra, in order to answer the contention of the Assessor that Plymouth Harbor was not entitled to summary judgment even if its contracts did meet the requirements of the grandfather clause. Consequently, we must still decide whether the court correctly determined that both forms of the contract precluded Plymouth Harbor from passing the burden of the taxes on to its residents.
The record reflects that Plymouth harbor had been operating on a net loss basis in 1972 and for several years prior thereto. Presumably because the cost of operation had been increasing more than the 5% per year that Plymouth Harbor had been able to increase its rentals, it was stipulated in the trial court that with respect to the units rented under the contract which did not contain the state and federal tax clause, Plymouth Harbor was prohibited from increasing the monthly residents' charges for the payment of ad valorem taxes. Therefore, it is unnecessary for us to determine whether Plymouth Harbor would have a right to collect the taxes from the residents through the vehicle of the 5% increase provision of the contract. The remaining units, which were rented under the contract which permits Plymouth Harbor to charge for "any and all applicable state and federal taxes" presents a different problem.
Plymouth Harbor's main contention is that ad valorem taxes are not state taxes, as such. While ad valorem taxes are levied by the county, they are, nevertheless, imposed under the authority of Fla. Const., art. VII, § 9. In a different factual situation, the Fifth Circuit Court of Appeals in Berryhill v. Gerstel, 5th Cir.1952, 196 F.2d 304, held that the words "taxes due any state" included taxes levied by Broward County on realty and personally. In the final analysis, the contract reflects the obvious intent of the parties to require the residents to bear the burden of whatever *633 taxes might be assessed against Plymouth Harbor which would be applicable to the residents. We cannot believe that by this language the parties intended to permit Plymouth Harbor to charge the residents for any taxes levied upon it by the state and yet not charge for taxes levied by the county. The self serving affidavit to the effect that it has always been the understanding between Plymouth Harbor and its residents that Plymouth Harbor could not and would not increase the monthly charge for the payment of ad valorem taxes is legally insufficient to dictate a contrary result.
The Assessor's contention that none of the "common areas" are exempt from taxation by reason of the grandfather clause is without merit. Fla. Stat. § 196.197(5) (1971) states:
"The extent of exemption of property of homes for the aged found to be used predominantly for exempt purposes, shall be made by dividing the total number of rental units and apartments meeting all requirements for exemption set forth in this chapter by the total number of rental units and apartments in the home. This ratio shall be the extent of exemption granted to that portion of the home's property essential to the operation and purposes of the exempt portions of the home."
Obviously, when a certain proportion of the rental units are found to be exempt, the same proportion of the balance of the property which is essential to the operation of the home should also be exempt. To accept the Assessor's argument would result in the square footage within the exempt units being fully exempt but the hallway leading to these units being fully taxable.
The summary judgment is hereby affirmed to the extent of the exemption for those units occupied under the form of contract without the state and federal tax clause. The summary judgment is reversed to the extent that those units occupied under the contract with the tax clause are not entitled to the benefit of the grandfather clause. The ratio of exempt to non-exempt property shall be applied against all of the property essential to the operation and purpose of the home. The case is hereby remanded for further proceedings with respect to the balance of Plymouth Harbor's complaint.
HOBSON, A.C.J., and BOARDMAN, J., concur.

ON PETITION FOR REHEARING
The following supplemental opinion is issued both in response to appellants' petition for rehearing and as an adjudication of Case No. 75-100 and Case No. 75-182.
GRIMES, Judge.
Prior to the disposition of appellants' petition for rehearing, at the joint request of the parties, this court relinquished jurisdiction of the cause to the trial court to permit the adjudication of counts I, III and IV of the complaint while the appeal from count II remained pending. Thereupon, the court below granted appellee's motion for summary judgment on these counts. Upon the filing of a notice of appeal from the new judgment, that appeal was consolidated with the appeal pending in this court on rehearing. Additional briefs were filed and further oral argument was heard with respect to all of the issues involved in the case.
In our original opinion, we stated that with the deletion of the unconstitutional portions of Chapter 196, the record in this case was sufficient to support a summary judgment which would grant a tax exempt status to Plymouth Harbor. However, Plymouth Harbor was not then in a position to obtain this relief because only the interpretation of the grandfather clause under count II had been adjudicated below. *634 When the case was remanded for further proceedings, the court understandably relied upon our previous comments and entered summary judgment for Plymouth Harbor accross the board. Regrettably, we have now determined that our conclusions with respect to the record in this case were more sweeping than they should have been.
Our attention has been more specifically directed to the applicability of the statutory definition of charitable purpose set forth in Fla. Stat. § 196.012(6) (1971), which reads as follows:
"(6) `Charitable purpose' means a function or service which is of such a community service that its discontinuance could result in the allocation of public funds for the continuance of the function or service."
This definition was not disturbed by the decision of Presbyterian Homes of Synod of Florida v. Wood, Fla. 1974, 297 So.2d 556. In fact, it was quoted in that case and referred to as being significant in the determination of whether to grant a tax exemption to a home for the aged.
In deciding whether a home for the aged meets this criterion, it is pertinent to ask whether the financial status of the residents is such that if the services of the home were discontinued public monies would be spent to provide housing for an appreciable number of them. While Presbyterian Homes struck down the "income test" as the sole criterion for the tax exemption of homes for the aged, the court observed:
"... Religious or church or charitable concern for the aged is not to be measured solely by individual pecuniary or income criteria although they play a part. ..." (Emphasis supplied.)
A facility which is the equivalent of a high priced condominium providing luxury living cannot expect to receive tax exempt status as fulfilling a charitable purpose even though its use is limited to older persons and operated by a licensed nonprofit organization. See Small v. Pangle, 1975, 60 Ill.2d 510, 328 N.E.2d 285.
In the case sub judice the evidence reflects that in addition to the payment of substantial fees for monthly maintenance some of the residents have paid founders fees in amounts as high as $37,500 for the right to live in a two bedroom apartment. The subject property includes an infirmary, a chapel, an auditorium, food services, swimming pool and other recreational facilities. Plymouth Harbor receives no donations from any church or governmental agency. Its operating income exceeds its operating expenses, though its income statement reflects a loss after the deduction of mortgage interest and depreciation. The evidence touching upon the allegations of lavish accommodations is not fully developed in this record. There is no evidence of the net worth or income of the residents. Likewise, there is no evidence on the question of whether anyone can obtain an apartment without paying all of the prescribed founders fee or whether a resident is subject to being dispossessed if he is unable to keep current his monthly maintenance fee.
While the facts disclosed by the record are not necessarily in dispute, the inferences which may be drawn therefrom are conflicting. Moreover, it is evident that additional facts are available which if made known would aid in the determination of whether the Plymouth Harbor property serves the function specified by Fla. Stat. § 196.012(6). This issue, which was raised under count I, cannot be decided upon summary judgment. Visingardi v. Tirone, Fla. 1966, 193 So.2d 601.
In view of our disposition of count I, it becomes necessary to revisit the question which was bypassed in the original opinion; namely, whether contractual compliance with the grandfather clause obviates the necessity of meeting any other *635 criteria in order to qualify for an exemption. We hold that it does not. Aside from the ambiguities in the subsection which were pointed out in the original opinion, the introductory portion of Fla. Stat. § 196.197 (1971) indicates the necessity of also meeting the requirements contained in the balance of Chapter 196. Hence, the interpretation of Plymouth Harbor's contracts with respect to the grandfather clause is not irrelevant.
Under Count III, Plymouth Harbor successfully contended it is automatically entitled to the exemptions since the Assessor failed to deny its application for exemption by June 1 of the year for which the application was filed pursuant to Fla. Stat. § 196.193(5) (1971). The record reflects that prior to June 1, the Assessor orally requested and received from the Department of Revenue an extension of time within which to deny applications for tax exemption. The Department requested that the request for extension be formally submitted on a Department from. The form was executed on June 1, and five days later the Department granted an extension in writing until June 30. The Assessor's denial of exemption to Plymouth Harbor was actually made on June 26. The denial came in time to permit Plymouth Harbor to appeal to the Board of Tax Adjustment, albeit unsuccessfully.
While there is no specific authority for the Department of Revenue to grant such an extension, the Department is given general supervision over the assessment and valuation of property. Fla. Stat. § 195.002 (1971). The Department has specific authority to extend the time for completing the assessment of all property. Fla. Stat. § 193.023(1) (1972). In view of the extension authorized by the Department, we do not believe that Plymouth Harbor is entitled to the exemption simply because the denial was not made by June 1, particularly where no prejudice has been shown by reason of the delay in making the denial. This case substantially differs from Gamma Phi Chapter of S.C.B.F. Corp. v. Dade County, Fla. 1967, 199 So.2d 717, in which it was held that a taxpayer's application for exemption was untimely when it was filed three months too late.
Count IV of the complaint was directed only to the constitutionality of that portion of the statute ultimately struck down in Presbyterian Homes. However, this still doesn't give Plymouth Harbor the exemption, unless it can prove that its property meets the requirement of being used for a charitable purpose.
The summary judgments are reversed, and the cases are remanded for further proceedings consistent herewith.
HOBSON, A.C.J., and BOARDMAN, J., concur.