STATE, ex rel. VICTOR J. TATHAM, C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY, and E. G. SEWELL, v. D. C. COLEMAN, as Sheriff of Dade County.

166 So. 221.

Division B.

Opinion Filed February 19, 1936.

*Vincent C. Giblin, J. W. Watson, Jr., Abe Aronovitz* and *Hughes & Reeder,* for Petitioners;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for Respondent.

BUFORD, J.—On January 17, 1936, a Justice of this Court issued writ of habeas corpus to the Respondent Coleman, as Sheriff, on petition of Orville Rigby, C. H. Reeder, E. G. Sewell and A. D. H. Fossey, who each alleged that he was unlawfully restrained of his liberty by D. C. Coleman as Sheriff of Dade County, Florida, under a capias issued under a certain pretended indictment filed in the Circuit Court of Dade County, Florida, on August 16, 1935,

and that the said pretended indictment charges no offense under the laws of the State of Florida.

The return admits that the petitioners are each held under a capias issued as alleged and under no other.

The case is before us on motion to discharge each of the petitioners, the return notwithstanding.

The sole question for our determination is whether or not the indictment which is made a part of the petition in each instance charges any offense against the laws of the State of Florida. The charging part of the indictment is as follows:

"That on the twentieth day of April, A. D. 1934, VICTOR J. TATHAM, C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY and E. G. SEWELL did unlawfully conspire, combine, agree and confederate together to cheat and defraud the CITY OF MIAMI, FLORIDA, a municipal corporation, of its money, goods and chattels, to-wit: certain tax sale certificates of the aggregate value of ninety-seven thousand dollars ($97,000.00) by unlawfully pretending to sell, convey and transfer to the CITY OF MIAMI, FLORIDA, certain lands in Dade County, Florida, to-wit:

"A. The East one-half (E½) of the Northeast one-quarter (NE¼) of the Northwest one-quarter (NW¼) of Southeast one-quarter (SE¼) of Section 20, Township 54 South, Range 41 East, containing five acres, more or less, in the Coconut Grove colored district, and Lots 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, and 72 of Perry's Resubdivision of Block 8 of Jape's or Sost's Addition, and

"B. Lots 33 and 40 of Perry's Resubdivision of Block 8 of Jape's or Sost's Addition, being a tract of land in the City of Miami colored district, subject to a mortgage

encumbering that part of said land mentioned in Perry's Resubdivision of Block 8 of Jape's or Sost's Addition, in the sum of eighteen thousand dollars ($18,000.00) in exchange for ninety-seven thousand dollars ($97,000.00) worth of tax sale certificates of the CITY OF MIAMI, FLORIDA, at a grossly, excessive, exorbitant and fictitious value, and to the detriment, injury and loss to the said CITY OF MIAMI in that on the said twentieth day of April, A. D. 1934, the said C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY and E. G. SEWELL were then and there the duly elected, qualified and acting Commissioners of the City of Miami, Florida, and did agree with the said VICTOR J. TATHAM that he, the said VICTOR J. TATHAM, should offer for sale to the CITY OF MIAMI the lands hereinabove described by a certain offer in writing in words and figures following, to-wit:"

Then follows copy of the contract referred to, after which the following appears:

"And that the said Commissioners, C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY and E. G. SEWELL should accept said offer by the adoption of a resolution at a meeting of the Commission of the City of Miami to be held on a subsequent date, whereby the said City of Miami should pretend to purchase the said land at and for the purchase price of twenty-nine thousand and forty-one dollars and twenty-three cents ($29,041.23) and that a certain corporation, namely THE SIVORT CO., a corporation organized and existing under the laws of the State of Florida, should pretend to sell and convey the said lands to the CITY OF MIAMI in consideration of said sum of twenty-nine thousand and forty-one dollars and twenty-three cents ($29,041.23), and that the said VICTOR J. TATHAM and THE SIVORT CO. should purchase certain tax certificates of

the CITY OF MIAMI for the year 1931 of the aggregate principal amount of twenty-two thousand dollars ($22,000.00) and certain tax certificates of years prior to 1931 of the aggregate principal amount of fifty thousand dollars ($50,000.00) at and for a purchase price of five thousand dollars ($5,000.00), the said VICTOR J. TATHAM and the said C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY and E. G. SEWELL then and there well knowing that the said land so offered to be sold to the CITY OF MIAMI and conveyed in exchange for the aggregate value of the certificates aforesaid was not then and there owned by the said VICTOR J. TATHAM, THE SIVORT Co., nor either of them, and that the said VICTOR J. TATHAM and THE SIVORT Co. had no right, title, equity, interest or demand in or to the said land except a right and privilege to purchase the same of and from the owner thereof, and the said VICTOR J. TATHAM and the said C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY and E. G. SEWELL then and there well knowing that the said land so pretended to be sold but in reality intended to be exchanged for tax certificates, was not then and there of the fair value of the mortgage against said land which it was intended the City of Miami should assume, and that thereafter, in order to effect and carry out the provisions, terms and conditions of the said conspiracy, agreement and combination between the said VICTOR J. TATHAM and C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY and E. G. SEWELL, the said Commissioners C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY and E. G. SEWELL, did cause one A. E. Fuller then and there the Director of Finance of the City of Miami and the officer, agent, servant and employee of the said City, to write, execute and deliver unto the GUARANTY TITLE AND ABSTRACT CORPORATION of the City of Miami, a certain check

dated the seventh day of May, A. D. 1934, payable to said GUARANTY TITLE AND ABSTRACT CORPORATION in the amount of twenty-nine thousand and forty-one dollars and twenty-three cents ($29,041.23) in order that the said GUARANTY TITLE AND ABSTRACT CORPORATION could use the amount of said check to pretend to purchase from the City of Miami certain tax certificates of the aggregate value of twenty-nine thousand and forty-one dollars and twenty-three cents ($29,041.23) and did cause the said A. E. FULLER, the officer, agent, servant and employee of the said CITY OF MIAMI, to also deliver unto the said GUARANTY TITLE AND ABSTRACT CORPORATION tax certificates in the principal amount of SEVENTY-SEVEN THOUSAND DOLLARS ($77,000.00) so that the same could be sold and assigned to other persons subject to the orders of him the said VICTOR J. TATHAM, could realize from the sale thereof sufficient funds to pay the CITY OF MIAMI five thousand dollars ($5,000.00) for the pretended purchase price of fifty thousand dollars ($50,000.00) worth of certificates so delivered unto the GUARANTY TITLE AND ABSTRACT CORPORATION for the use and benefit of him the said VICTOR J. TATHAM, and in order further to realize the monies necessary to make the down payments upon the land hereinabove described to the owners thereof, in the amount of forty-five hundred dollars ($4500.00) so that the said lands could be conveyed to the CITY OF MIAMI subject to a mortgage of eighteen thousand dollars ($18,000.00 ) and so the Grand Jurors aforesaid, on their oaths aforesaid, do say that the said VICTOR J. TATHAM, C. H. REEDER, A. D. H. FOSSEY, ORVILLE RIGBY and E. G. SEWELL did in said county and state, on the date aforesaid, unlawfully combine, conspire, agree and confederate together to defraud the CITY OF MIAMI, a municipal corporation organized and existing

under the laws of the State of Florida, contrary to the form and statutes of such cases made and provided, to the evil example of all others in like case offending, and against the peace and dignity of the State of Florida."

In short, the indictment charges that Victor J. Tatham on the one hand, and Reeder, Fossey, Rigby and Sewell on the other hand, agreed that Tatham should sell and the City of Miami should purchase for certain tax sale certificates certain described land for park purposes, which lands were agreed to be so sold and purchased at an exorbitant and fictitious value and that the said Reeder, Fossey, Rigby and Sewell were the duly elected, qualified and acting Commissioners of the City of Miami at the time such agreement was entered into. The indictment does not allege that any duty rested upon the Commissioners named to purchase the lands. The indictment, in effect, alleges that it was agreed that instead of paying cash for the lands the city would deliver certain tax sale certificates to be converted into cash with which to pay for the lands and there is no allegation in the indictment that the tax certificates referred to had any market value.

It is also alleged that the parties above named conspired to sell old tax certificates issued prior to the year 1931 aggregating the face amount of $50,000.00 for $5,000.00. There is no allegation that those certificates were worth either more or less than $5,000.00.

There is no allegation in the indictment that the action alleged to have been taken by, and the things alleged to have been done by, Reeder, Fossey, Rigby and Sewell was corrupt, or that such action of either of said Commissioners was willfully fraudulent or corrupt, nor that they, or either of them, were influenced by any fraudulent, corrupt or wicked motive. The most that the indictment charges is

that the members of the City Commission agreed to pay more for a certain tract of land which was desired for park purposes than the land was worth and that they sold a certain lot of old tax certificates for the sum of $5,000 without any allegation that those old certificates were worth more or less than the sum for which they agreed to sell them.

. The indictment evidently was intended to charge an offense under Section 5400 R. G. S., 7541 C. G. L., which ·is as follows:

"If two or more persons shall agree, conspire, combine ·or confederate: (1) To commit any offense; or (2) falsely or maliciously to indict another for any offense, or procure another to be charged or arrested for any offense; or (3) falsely or maliciously to prove or maintain any suit; or (4) to cheat and defraud any person of any money or property by means which are in themselves criminal; or (5) to cheat and defraud any person of any money or property by any means, which, if executed, would amount to a cheat or to obtaining property by false pretenses; or (6) to commit any act injurious to the public health or public morals, or for the prevention or obstruction of justice; or ·(7) to interfere with or prevent the holding or conducting of any election, or making returns thereof, or to prevent the due administration of the laws, they shall be punished by imprisonment not exceeding one year, or by fine not exceeding five hundred dollars."

Certainly, the indictment does not fall within division (1) nor within division (2), nor within division (3), nor within division (6) nor within divison (7) of the Act. Division (4) of the Act applies to a conspiracy to cheat and defraud any person of any money or property by means of which are in themselves criminal.

The indictment does not allege any facts showing that any criminal means were employed in the perpetration of the alleged conspiracy. Division (5) of the Act refers to a conspiracy to cheat and defraud any person of any money or property by means which, if executed, would amount to a cheat or to obtaining property by false pretenses.

The allegations in the indictment are entirely insufficient to describe a cheat according to the common law definition thereof and there is no allegation of any false pretense. We may take judicial cognizance of the City Charter, which is a legislative Act, and find that paragraph (f) of Section (3) thereof authorizes the City Commission to acquire by purchase, gift, devise, condemnation or otherwise, property, real or personal, or any estate or interest therein within or without the city, for any of the purposes of the city and to improve, sell, lease, mortgage, sell or otherwise dispose of the same, or any part thereof.

The contract, made a part of the indictment, shows that the lands were contemplated to be purchased for park purposes.

In Jetton-Dekle Lbr. Co. v. Mather, *et al.*, 53 Fla. 969, 43 Sou. 590, we held: "To constitute conspiracy, either the act conspired or the manner of its doing must be unlawful."

Certainly it was lawful for the Commission to purchase lands for park purposes. The only question then left open is whether or not the indictment alleges sufficient facts to show that the manner proposed to be exercised in the purchase of the lands for park purposes was unlawful.

It may have been unwise; it may be that the price agreed to be paid was exorbitant but there is no allegation in the indictment setting forth facts showing an unlawful act on

the part of the City Commission. It would, indeed, be both a novel and unwarranted conclusion to assert that it would constitute a criminal or unlawful act for a City Commission to agree to pay for a piece of property urgently needed for city purposes more than the actual market value of the property. What everybody knows, as we have said heretofore, courts may be presumed to know, and it is a matter of common knowledge that location is an important factor in the selection of city parks and that parks are important adjuncts to city government. It is further commonly known that land owners are ever ready to take advantage of the municipality's necessities and demand exorbitant prices for property which the welfare of a city demands should be acquired for public purposes. There are many good and valid reasons which may prompt a city commission to pay more for property which is urgently needed for municipal purposes than the market value of the property at the time the property is purchased and unless it can be alleged and shown that the action of the City Commission in connection with such a matter is corrupt and consummated in fraud, which acts of fraud must be specifically alleged and proved, then they cannot be held criminally liable because they may have entered into improvident and unwise contracts by which they hoped to acquire certain property for public purposes.

In *Ex Parte* Amos, 93 Fla. 5, 112 Sou. 289, we said:

"At common law a public officer is punishable criminally for official misconduct that involved corruption, and if the official misconduct charged does not ordinarily involve moral turpitude or like evil intent or purpose, it is essential that it be alleged and proven that the officer corruptly acted or failed to act; and this rule is peculiarly applicable where the official has judicial or quasi-judicial discretion in the premises.

In this case an administrative officer, having a discretionary power in discharging a statutory duty, is merely charged with not doing an official act that he could have done in his discretion, he is not charged with any act that involves moral turpitude. Nor is he charged with a breach of official duty except as may result from an erroneous or mistaken exercise of official discretion in performing a statutory duty. The mere erroneous or mistaken exercise of discretion in performing an official duty is not a criminal offense under any statute, and is not malpractice in office for which criminal prosecution may be had under Section 5354, Revised General Statutes. Where the act charged as malpractice in office does not involve a moral wrong or an intentional breach or violation of official duty, but is merely a failure to do an official act that the officer could have done or refrained from doing in the exercise of discretion given him by law, such an act is not the malpractice in office that is made a crime by the cited statute. It is not alleged that defendant corruptly acted or failed to act in the matters alleged."

We think that by analogy the rule stated in the Amos case is applicable here.

In Bishop's New Criminal Law, Vol. 1, Section 460, paragraph 1, it is said:

"One serving in a judicial or other capacity in which he is required to exercise a judgment of his own is not punishable for a mere error therein, or for a mistake of law. His act, to be cognizable criminally, or even civilly, must be willful and corrupt."

The indictment in this case is void of any such allegation.

As the indictment totally fails to charge any criminal offense, the petitioners should be discharged.

It is so ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.