PIERCE, Judge.
This is an appeal by appellant Robert J. Haslett from judgments of conviction entered against him by the Criminal Court of Record for Polk County after a consolidated trial of two informations charging embezzlement, and jury verdicts of guilty in each case.
In appeal No. 68-438, information was filed on April 25, 1968, charging that Has-lett, on March 6, 1968, as Clerk of the Criminal Court of Record for Polk County, converted to his own use the sum of $966 belonging to the County, in violation of F. S.§ 812.10, F.S.A. In appeal No. 68-439, the information, filed the same date, was identical except that it alleged an embezzlement of $1,932 on March 7, 1968.
Upon pleas of not guilty, the informa-tions were consolidated for trial. On August 28, 1968, the jury returned verdicts of guilt in both cases, and on the same day judgments of conviction and sentences were entered. Separate appeals to this Court were filed, which have been consolidated here for purpose of disposition.
Defendant Haslett poses three questions here for reversal, which may be re-stated in two questions, as follows: (1) whether the $966 and $1,932 taken by Haslett belonged to him or the County, and (2) whether reversible error was committed in *188 allowing certain evidence to go to the jury-over objection. We will consider the two questions seriatim.
(1) Ownership of the money taken.
F.S. § 812.10, F.S.A. provides inter alia that:
“Any * * * county * * * officer who shall:
(a) Convert to his own use;
******
(1) Any money * * * belonging to * * * [the] county * * * whose duty requires him to receive said public money * * * shall in every such act be deemed guilty of an embezzlement of the money * * * so converted, * * * and shall be punished * * *” etc.
On March 6, 1968, defendant Haslett was and had been the duly elected, qualified and acting Clerk of the Criminal Court of Record for Polk County continuously for some fifteen years. Before that he had been deputy clerk in that same office, also clerk in charge of the books and records of the local Sheriff’s office and the local County Judge’s office.
On March 6th, he drew a check payable to himself for $966 on the “general account” of his official Clerk’s office, the proceeds of which he deposited $500 in a personal account, retaining the $466 balance in cash. The next day he drew two more similar checks for $966 each, which he cashed the same day.
Haslett’s position is that the funds represented by the three checks belonged to him personally, and not the County, and that when he put the $3,998.00 in his pocket and deposited the $500 in a personal account, he was merely paying his Clerk’s compensation to himself; and he was therefore “handling” his own money, in his own way, as he had a right to do.
His contention that the checks were for his official compensation runs somewhat as follows: (1) that he was a “fee officer” under applicable State statutes and as such derived his compensation from fees paid into his office for official services rendered by him as Clerk of the Court; (2) that “title” to such fees was held by him up to the amount of his annual compensation fixed by statute; (3) that he could “draw” such amounts, as from time to time he saw fit, up to the amount of his annual compensation; (4) that on March 6th and 7th, he had not drawn his full amount of annual compensation; and that therefore (5) when he paid himself the three checks in question he was merely compensating himself as Clerk, and any excess was an “advance” upon his yearly pay.
The primary crux of his whole structured contention is in his premise (2) that he had “title” to the fees paid into his office. He relies upon the 1931 case of Sparkman v. County Budget Commission, 1931, 103 Fla. 242, 137 So. 809. But the sole issue in Sparkman was the constitutionality of a “population statute” of 1931 creating a County Budget Commission for Hillsborough County. An isolated portion of the opinion in Sparkman, which is obviously obiter, reads as follows:
“Under the statutes (Comp.Gen.Laws 1927, §§ 2870, 2871, 2874, 2875) a particular county officer acquires title to the fees and other compensation he is by law allowed to receive for official services only in an amount of the net income from the office that does not exceed the ‘yearly compensation’ fixed by the statute. All reasonable expenditures for the salaries of clerks and assistants and the necessary expenditures for the proper operation of the office are to be deducted from the gross income to determine the ‘net income’ from which the officer is to get his ‘yearly compensation.’
Amounts received by the officer for services rendered by virtue of the office in excess of the sum the officer is allowed from the ‘net income’ of the office as his ‘yearly compensation,’ are held in trust by the officer to be accounted for *189 and paid over by the officer as required by the statute. See Dayton-Goose Creek Ry. Co. v. United States, 263 U.S. 456, 44 S.Ct. 169, 68 L.Ed. 388, 33 A.L.R. 472.”
The Justice who wrote the opinion in Sparkman was the venerable Judge Whitfield who, like the beloved Judge Armstead Brown, delighted in “blocking out all the law” of any given case and therefore frequently went beyond the necessities of the particular opinion. So while a cursory examination of the quoted portion above, read out of context and in the light of 1931 statutes rather than 1968 statutes, could well lead to the conclusion that there is merit to Haslett’s position, a careful reading of the entire opinion in Sparkman discloses that the quoted portion was upon subject matter extraneous to the main point in issue. The Sparkman quotation loses its weight as competent authority— expecially two-thirds of a century later— by merely observing the admonition of Justice Whitfield himself in Ex Parte Amos, 1927, 93 Fla. 5, 112 So. 289: “It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used”. See this 2nd District Court’s opinion in Booth v. Mary Carter Paint Company, Fla.App. 1966, 182 So.2d 292.
But disregarding the obiter, the quoted passage from Sparkman is no authority now. Sparkman cites then-existing § 2874, Comp.Gen.Laws, 1927, and Haslett, in his brief filed here, says that — “It is interesting to note that section 2874, CGL 1927, referred to in the quotation, is identical in all material respects to Haslett’s pay bill, Ch. 61-1371.”
§ 2874, CGL 1927, provides inter alia that certain County officers therein designated, “now paid * * * by fees * * shall receive as his yearly compensation for his official services from * * * the fees * * * so collected the following sum only: all the net income from such office not to exceed * * etc.
Ch. 61-1371 (“Haslett’s pay bill”) provides that “the clerk of the criminal court of record * * * of [Polk County] whose compensation for his official duties is paid * * * by fees * * * shall receive as his yearly compensation for his official services from * * * the fees * * * so collected and earned, all of the net income from such office not to exceed * * * ”, etc. (Emphasis supplied).
The conspicuous distinction between § 2874, CGL 1927 referred to in Sparkman, and “Haslett’s pay bill”, Ch. 61-1371, is that in § 2874 the official receives his “yearly compensation” from the “fees * * * so collected”, while in Ch. 61-1371 Haslett receives his “yearly compensation” from the “fees * * * so collected and earned”. These ' italicized words “and earned” provide a vital qualifying distinction between the fees involved in Spark-man and the fees involved here. (Ch. 61-1371 fixed Haslett’s annual compensation at $10,000.00. Ch. 65-617 increased it to $11,000.00. Ch. 67-1044 raised it to $11,-600.00. They were all local “population” Acts).
Prior to 1957 there was little uniformity in regulation of county fee officers, either as to their compensation or in the manner of their handling of the fees collected. But the legislature in the 1957 session enacted Ch. 57-349, the provisions of which have been severally brought forward in the biennial compilations of Florida Statutes. The 1957 Act, by its own terms was “to provide for the safeguarding, safekeeping, and for the receipt and disbursement of public money; [and] to prescribe the duties of county officers and state officers in connection [t] herewith”. These statutory provisions, finding their genesis in the 1957 Act, illustrate how zealous the law now is in regulating the collecting and handling of public funds.
Section 1(1) of the 1957 Act, now F.S. § 219.01(1), F.S.A., defines the term “offi *190 cer” to mean “a county officer * * * whose duties require or authorize him to collect public money”.
Section 1(2) of the 1957 Act, now F.S. § 219.01(2), F.S.A., defines “public money” to mean “all money collected by a county officer which he is required or authorized by law, as such county officer, to collect”.
Section 2 of the 1957 Act, now F.S. § 219.02, F.S.A., provides that a receipt shall be issued by the officer “for each collection of public money made by him, a copy of which receipt shall be retained by the officer and shall be a public record”, and that—
“It shall be the duty of each officer to keep safely all the public money collected by him. Each officer shall exercise all possible care for the protection of the public money in his custody, and all public money shall be kept separate in the depository and shall not be commingled with personal funds.”
Section 5 of the 1957 Act, now F.S. § 219.05, F.S.A., provides that “public money as defined in this act may be deposited in a depository under the provisions of § 659.24 and the regulations of the comptroller pursuant thereto”. F.S. § 659.24, F.S.A. says that “banks shall be depositors of public moneys under such regulations as may be prescribed by the commissioner”, who is the comptroller. F.S. §§ 658.02(5) and 658.04(2), F.S.A.
Section 6 of the 1957 Act, now F.S. § 219.06, F.S.A., provides, in its essential parts, the following:
“Each officer whose compensation for his official duties is paid * * * by fees * * * shall handle all collections of fees * * * in the same manner as other public money is herein required to be handled.”

The officer may withdraw from the earnings of the office for his personal use at any time any amount which, together with previous withdrawals, shall not exceed his interest therein if his compensation were calculated to that time, prorated according to the number of days that had elapsed since the beginning of the calendar year.’’

* * * * * *
The above italicized portion of F.S. § 219.06, F.S.A. is compatible with what Judge Glenn Terrell said, speaking for the Supreme Court in Flood v. State ex rel. Board etc., 1930, 100 Fla. 70, 129 So. 861, a case involving compensation of the Clerk of the Criminal Court of Record for Dade County:
“The law is well settled in this country that while one’s right to office is a substantive right that may be enforced in appropriate proceedings, yet a public officer has no estate in his office, that the unearned fees or commissions accruing to him therefrom are not property, and that therefore requiring them to be paid into the treasury and a salary paid in lieu thereof is not taking private property for public use without compensation. 23 Am. & Eng.Encyc. of Law 397. It is also well settled in this state that fees collected by officers represent the charge which the state makes for services rendered by it through its officers, and constitute a fund subject to the control of the state and to be applied as the Legislature directs. State ex rel. Buford v. Spencer, [84 Fla. 206, 93 So. 667] supra.”
We now advert back to the specific facts of the case sub judice. It was established at the trial, by cancelled checks and other records from his official Clerk’s office, that on March 6, 1968, before drawing the $966 c^ieck to himself of that date, Haslett had already drawn and paid to himself during 1968 as compensation out of fees collected by his office, the sum of $2,785.-13, which amount, augmented by his “draw” of $966 on that day, made a total aggregate of $3,751.13 which he had paid himself as compensation that calendar year to March 6th. His lawful compensation, *191 however, based upon his annual income of $11,600 fixed by law, and computed according to the legal formula provided by F.S. § 219.06, F.S.A., was, on and including March 6, 1968, the amount of $2,091.80. It is obvious, therefore, that the difference between the amount of $2,091.80 which he had “earned” as compensation to March 6th, and the amount of $3,751.13 which he had paid himself as compensation, amounting to $1,659.33, constituted overpayment to himself of this amount as “unearned compensation”. And this was out of public money in the form of fees collected. In so doing, he was “converting to his own use * * * money * * * belonging to * * * the * * * county”, which F.S. § 812.10, F.S.A. denounces as embezzlement by a county officer. This in substance is what the information in appeal No. 68-438 charged.
And the cashing of the two checks on March 7, 1968, just made matters worse. He was entitled to one more day’s pay of $31,694 (again using the formula prescribed by § 219.06), which, added to the $2,091.80 he had earned through March 6th, amounted to $2,123.50 earned as of March 7th. But at the close of that day he had paid himself as compensation the total sum of $5,683.13, or an amount of $3,559.63, in “unearned compensation” for services he had not performed. This was a separate offense of embezzlement under F.S. § 812.10, F.S.A. and is what he was charged with in the information in appeal No. 68-439.
All the foregoing assumes that defendant was a “fee officer” entitled to compensation under Ch. 61-1371, as amended by the 1965 and 1967 Acts aforesaid. But this assumption ignores the plain wording of both the ’65 and ’67 Acts. While the ’61 Act is clearly a “fee bill” law, the ’65 and ’67 Acts, equally as clearly, put compensation of the office on a salary basis.
Ch. 65-617 is entitled “An Act relating to salaries of certain county officials in each county [within a prescribed population bracket, including Polk County], and having a criminal court of record; fixing the annual salaries of each said county of the clerk of the criminal court of record * * *; providing effective dates of salaries; providing an effective date of the act”. The effective date of the act is by its terms fixed at July 1, 1965, and prescribes that after that date “the clerk of the criminal court of record * * * [of Polk County] shall receive an annual salary oí eleven thousand dollars ($11,000.00) * * * Each such salary shall be paid by” the board of county commissioners “in equal monthly installments”. (Emphasis supplied).
Ch. 67-1044 js identical, both in its title and the body thereof, with the ’65 Act aforesaid, except that it deals only with the annual salary of the clerk of the criminal court of record (whereas the ’65 Act included also the county commissioners), which it raises to $11,600.00, and makes the Act effective July 1, 1967.
Thus the 1965 and 1967 amendatory Acts by clear and unequivocal wording put the compensation of the Clerk on a salary basis rather than on a fee basis, as it formerly had been. The word “salary” or its plural “salaries” is used several times in both the title and the body of each of the Acts. Also, the ’65 and ’67 Acts both provide that such “salary” shall be paid by the local board of county commissioners “in equal monthly installments”. And each Act prescribes a specific date it shall become effective, July 1st of the year of enactment.
Under the 1967 amendment giving Haslett an annual salary of $11,600, his monthly pay should have been one-twelfth of $11,600, or $966.67 per month; and on the basis of 366 days in the calendar year of 1968, the sum of 31.694 per day. On March 6th, 1968, his entitled salary was $2,091.80, and on March 7th it was $2,123.-49. These sums were somewhat less than the $3,751.13 he had paid himself as compensation through March 6th, and decidedly less than the $5,683.13 he had paid him *192 self through March 7th. The excess constituted “unearned compensation” which he had paid himself out of public money derived through his office. The utilization for his personal use of the three checks on March 6th and 7th constituted a conversion thereof to his own use, and therefore embezzlement, the same as if his compensation has been computed on a fee basis as aforesaid.
(2) Admission of alleged erroneous evidence.
Appellant Haslett does not rely upon any isolated piece of testimony or even any isolated witness. Instead he cites three groups of evidence or witnesses, which he calls Group A, Group B, and Group C. We will briefly discuss these groups as he lists them.
Group A. In this group is listed witnesses Goodson, Sanborn, Horne and Mann. Their . testimony is challenged as being redundant, immaterial and irrelevant.
Goodson, a Polk County deputy Sheriff, testified that on March 14, 1968, Haslett reported to him at the local Sheriff’s office that “he was missing $1800 from the inner safe at his office, the Clerk’s office, as of the morning of March 8, 1968 * * that it was his personal money”. Witness Sanborn, in local radio news work, testified that on April 4, 1968, he had a conversation with Haslett at his radio station, at Haslett’s instigation, during which Haslett told him he had written the three checks in question “for compensation to become due for April, May and June” and that “all of his money was gone from the safe, he had no funds with which to qualify for re-election, as I recall it.” Witness Mrs. Horne, a local Court Reporter, gave evidence that Haslett, on March 15, 1968, testified before the local grand jury that on March 8, 1968, he had discovered missing from his office safe $1,800 in personal funds which he had intended to use “for campaign purposes”. Witness Mrs. Mann, also a local Court Reporter, testified that on April 3, 1968, before the same grand jury, he reiterated his loss on March 8th of the $1,800 which he said he had on hand “to take care of any bad checks or any shortage that might be here — or anything else — because—more than enough down there”.
It is argued here on behalf of Haslett that testimony of these witnesses was an attempt by the State “to prove prior contradictory statements of defendant as to immaterial and collateral matters, with no foundation for impeachment being laid”.
The evidence is not amenable to such criticism. No “impeachment” was involved. The evidence was used to show inconsistent statements on Haslett’s part and to show guilty knowledge. In three instances he had stated he took the money represented by the three checks to cover the missing funds, but the checks were drawn on March 6th and 7th and he said the funds were not found missing until March 8th. The evidence was admissible.
Group B. In this group is listed witnesses Marchman and Cole.
Marchman, a banker at the Citrus and Chemical Bank in Bartow, the depository bank handling the general account for the Clerk’s office, identified the three checks in question, each for $966, drawn on March 6 and 7, 1968. Witness Cole, Vice President of the Florida National Bank at Lakeland, established the cashing of the March 6th check for $966 by Haslett at his bank, with $466 being taken in cash and the remaining $500 deposited in an account in his bank for Haslett and wife.
This testimony is admissible to show not only that Haslett received the proceeds of the three checks involved but also to establish the unusual manner and circumstances under which he cashed them. The Clerk’s office bank account was in the Citrus and Chemical Bank at Bartow but he took the first check on March 6th to the Florida National Bank in Lakeland where he deposited $500 in a personal account and took the remaining $466 in cash. He *193 carried the two checks on March 7th to the drawee hank in Bartow, cashed them at different times through two different tellers, but on the same day and at the same hank. The evidence was admissible. The weight of it was for the jury.
Group C. This group consists of witnesses Sanborn, Mrs. Mann and Mrs. Horne. It is urged that their testimony “suggests” the commission by Haslett “of independent and unrelated crimes”, namely, perjury.
We have already reviewed their testimony. The evidence indicated that Haslett gave varying accounts of why he took the funds on March 6th and 7th. Merely because his explanations to the witness Sanborn and the two occasions he appeared before the grand jury were inconsistent or contradictory is no ground for refusing its admission into evidence. On the contrary, this is ample reason for its admission. The jury could well infer guilt from such statements.
On the whole case, appellant has failed to demonstrate reversible error in the proceedings below and the judgment appealed is therefore—
Affirmed.
HOBSON, C. J., and McNULTY, J„ concur.