QUESTIONS: 1. Is the Indian Rocks Special Fire Control District indeed a public municipal corporation as stated in Ch. 29438, 1953, Laws of Florida, and does it have legal status as such? 2. May the district issue bonds? 3. May the district enact ordinances? 4. How should the district conduct its business? (a) Does the Sunshine Law apply? (b) Do the standards of conduct statutes apply? (c) Are the commissioners required to obtain competitive bids? (d) What approval is necessary as to budgets and what accountability is necessary as to funds budgeted? (e) Are its records public records under Ch. 119, F.S.? 5. What is the responsibility of the commissioners as individuals for the improper conduct of their public duties? 6. Is the district authorized or required to invest its funds? 7. How does Ch. 70-905, Laws of Florida, affect Ch. 29438, 1953, supra, and the district?
SUMMARY: The Indian Rocks Special Fire Control District is a public quasi corporation and, as such, is a governmental agency of the state, having only those powers which are delegated to it by law. The district is not empowered to issue general obligation bonds or revenue bonds, and its only power in this respect is "to borrow money . . . not to exceed 50 percent of the total assessment roll and to pledge for the payment thereof collections on said roll and give tax anticipation notes, which shall be the sole security for such loan. . . ." Section 8, Ch. 29438, 1953, Laws of Florida. With certain exceptions when it acts by resolution, the district's board of commissioners is directed by the district's enabling legislation to transact its business and carry out the provisions of such legislation by rule or regulation, thereby precluding the enactment of ordinances. The meetings of the district's board of commissioners must be conducted in accordance with the requirements of the Government in the Sunshine Law, s. 286.011, F.S. The members of the district's board of commissioners are subject to the Standards of Conduct Law, ss. 112.311- 112.318, F.S. The district's board of commissioners is not required to enter into contracts or purchase commodities on the basis of competitive bidding. The district's board of commissioners may adopt budgetary rules and regulations not inconsistent with the requirements of Ch. 218, F.S., or the rules and regulations of the Department of Banking and Finance promulgated pursuant thereto; and any provisions of the district's enabling legislation which conflict with the provisions of Ch. 218 should be considered nullified or repealed to the extent of the conflict. Specifically, the district's financial report should be filed with the Department of Banking and Finance, and its proposed budget with the Board of County Commissioners of Pinellas County for possible review and approval. The district's records are "public records" within the purview of the Public Records Law, ss.119.01-119.10, F.S. A public official, such as a member of the district's board of commissioners, must account for all public funds which come into his hands and may be liable as an insurer for the loss of such funds. In addition, a public official may be liable, either at common law or for violation of statute, for a variety of offenses, including nonfeasance, malfeasance, embezzlement, fraud, extortion, and misconduct or malpractice in office. District funds may be deposited in a bank authorized to receive deposits of county funds, or invested in the accounts of the savings associations designated in s. 665.321, F.S., or other authorized investments. Chapter 70-905, Laws of Florida, has no effect on the provisions of Ch. 29438, 1953, Laws of Florida, or the district. Initially, it must be stated that special districts are not municipalities, but are statutory entities created for definitely restricted purposes. Attorney General Opinions 074-49, 073-442, 073- 374, 073-314, 073-261, and 069-130. Moreover, as expressed in AGO 073-334, special districts "possess only such powers as are expressly given, or necessarily implied because essential to carry into effect those powers expressly granted." See State v. Smith, 35 So.2d 650 (Fla. 1948); Edgerton v. International, 89 So.2d 488 (Fla. 1956). Therefore, in responding to the questions raised in the instant situation, it is essential that potential sources of power for Indian Rocks Special Fire Control District be closely examined in order to determine its status and authority. AS TO QUESTION 1: In Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District,82 So. 346 (Fla. 1919), the Supreme Court of Florida was concerned with the status of the Everglades Drainage District, a special taxing district created "with all the powers of a body corporate." Chapter 6456, 1913, Laws of Florida, as subsequently amended. The court stated that public corporations may be subdivided into municipal and public quasi corporations: Municipal corporations embrace incorporated cities, villages, and towns which are full-fledged corporations with all the powers, duties, and liabilities incident to such status, while public quasi corporations possess only a portion of the powers, duties, and liabilities of corporations. 82 So. at p. 350. The court went on to hold that the Everglades Drainage District was a public quasi corporation and, as such, "a governmental agency of the state for certain definite purposes, having such authority only as is delegated to it by law." Id. See State ex rel. Kudner v. Lee,7 So.2d 110 (Fla. 1942); AGO 074-28. See also State of Florida Department of Citrus v. Huff, 290 So.2d 130 (2 D.C.A. Fla., 1974), to the effect that the mere fact that the legislature declares a board to be a "body corporate" does not of itself confer full corporate powers and rights. Accord: Attorney General Opinions 074-49, 073- 314, and 069-130. Attorney General Opinion 069-130 considered the question of whether a fire control district should be treated as a municipality or a public municipal corporation. The enabling legislation of the fire control district there involved provided that certain described lands "shall be incorporated as a special fire control district, which shall be a public municipal corporation." Chapter 63-1685, Laws of Florida, as subsequently amended. As expressed in AGO 069- 130, It is clear from a consideration of these special acts that the District is an entity created for definitely restricted purposes and not for general community government. The single reference to its status as a public municipal corporation, supra, is coupled with an enumeration of specific acts which the District may perform only in order to carry out the "purposes of this act." Those purposes, in my opinion, relate primarily to fire protection, and do not encompass the ordinary functions of a municipal corporation. The opinion then quotes from general authorities: Customarily, fire protection districts are not treated as municipal corporations. . . . Such districts possess the powers expressly granted to them by statute. . . . In most states grants of power to fire districts will be interpreted narrowly and strictly. Antieau: Local Government Law, Vol. 3A, Ch.XXX(D.). Also McQuillin, Municipal Corporations, Rev.Ed. Vol. 1, p. 403. Accord: Attorney General Opinion 071-305. Similarly, s. 1, Ch. 29438, 1953, Laws of Florida, creates the Indian Rocks Special Fire Control District (hereinafter referred to as the "district") as a "public municipal corporation, having the powers and duties herein set forth." However, such status is coupled with an enumeration of specified powers, ss. 9, 10, and 11, Ch. 29438, which does not encompass general governmental functions. Thus, pursuant to the foregoing authorities, I am of the opinion that the district is a public quasi corporation and, as such, is a governmental agency of the state, having only those powers which are delegated to it by law. Accord: Attorney General Opinion 074-49, in which it was stated that the district has no express or implied power to adopt and enforce fire prevention and fire safety codes and ordinances. Your first question is, therefore, answered in the negative. AS TO QUESTION 2: A special district may issue general obligation bonds and revenue bonds only as and if authorized to do so by the Florida Constitution or legislative act. State v. City of Pompano,188 So. 610, 620 (Fla. 1938); State v. Broward County,126 So. 491, 492 (Fla. 1930). Accord: Attorney General Opinions 073-374 and 073-261. Pursuant to Art. VII, s. 12, State Const., special districts with taxing powers may issue bonds payable from ad valorem taxation and maturing more than twelve months after issuance only to finance or refinance capital projects authorized by law and only when approved by a vote of the special district's electorate. Article VII, s. 10, id., prohibits a special district from pledging its credit when the public will be only incidentally benefited. See Bannon v. Port of
Palm Beach District, 246 So.2d 737 (1971). However, Art. VII, s. 10(c), id., provides that this constitutional proscription . . . shall not prohibit laws authorizing . . . the issuance . . . by any . . . special district . . . of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) . . . industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. (Emphasis supplied.) (It might be noted that the Supreme Court held in Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304, 308 [Fla. 1971], that the naming of these particular projects "was not intended to be exclusive" and that other public projects could be financed under revenue bonds without violating Art. VII, s. 10, supra. Accord: State v. Inter-American Center Authority,281 So.2d 201, 203 [Fla. 1973].) Significantly, both s. 12 and s. 10(c) of Art. VII, supra, presuppose some legislative act authorizing the issuance of bonds before a special district may do so. Cf. State v. Orange County, 281 So.2d 310 (Fla. 1973); State v. Ocean Highway and Port Authority, 217 So.2d 103 (1968). Therefore, it is again necessary to examine the enabling legislation of the district in order to determine its authority in this regard. Section 1(a) of Ch. 59-1744, Laws of Florida, repealing s. 4, Ch. 29438, 1953, id., and amended by s. 1, Ch. 71-872, id., provides that the district may levy special assessments against the taxable real estate situated within the district "to provide funds for the purposes of said district." And, under s. 8, Ch. 29438, the board of commissioners is authorized to borrow money and issue tax anticipation notes pledging the proceeds of such special assessments for the payment thereof in an amount not to exceed 50 percent of the assessment roll. However, this section specifically provides that . . . except as provided in this paragraph, the Commissioners shall not create indebtedness or incur obligations for any sum or amount which it is unable to pay out of district funds then in its hands. This provision encompasses no legislative authorization to issue general obligation bonds, which are obligations of future ad valorem taxing power, or revenue bonds, which are payable from specific future revenues. Tax anticipation notes, which are authorized, are not bonds. See State v. Lee County, 121 So.2d 789 (Fla. 1960); City of Orlando v. State,67 So.2d 673 (Fla. 1953). Section 9, Ch. 29438, supra, prohibits the use of district funds for purposes other than the administration of the district, the acquisition and maintenance of firefighting equipment, and the salaries of firemen. Section 2, Ch. 71-872, supra, establishes a building fund for a fire station in the district, financed by an annual deposit of 10 percent of the district's annual assessment roll for five years, if such fund is approved by the district electorate. Section 3, Ch. 71-872. The foregoing constitutional and legislative provisions are the only sources of district power to borrow money. It is evident from a reading of these provisions that there is no express or implied power in the district to issue general obligation bonds or revenue bonds, and that the district's only power in this respect is "to borrow money . . . not to exceed 50 percent of the total assessment roll and to pledge for the payment thereof collections on said roll and give tax anticipation notes, which shall be the sole security for such loan." Section 8, Ch. 29438, supra. Cf. AGO's 069-130, 073-164, 073-261, and 073-374. Your second question is answered in the negative. AS TO QUESTION 3: Generally, if the mode of the exercise of a power is not prescribed in enabling legislation or in some other legislative act, the governing body of a local governmental unit may exercise such power by resolution as well as by ordinance. See Certain Lots Upon Which Taxes Are Delinquent v. Town of Monticello, 31 So.2d 905, 911 (Fla. 1947); 62 C.J.S. Municipal Corporations s. 160, p. 322. Ordinarily, all acts done by a local governmental unit in its ministerial capacity and for a temporary purpose may be put in the form of resolutions, and matters upon which some permanent rule of conduct or government is desired should be enacted by ordinances. See 5 McQuillin, Municipal Corporations s. 15.02, pp. 43-45; cf. s.166.041(1)(a) and (b), F.S. However, whenever the controlling law directs the governing body to do a particular thing in a certain manner, the thing must be done in that manner. See 62 C.J.S. Municipal Corporations s. 161, p. 323; 5 McQuillin, Municipal Corporations s. 15.02, p. 45. Applying the foregoing general principles to the instant situation, s. 1(a), Ch. 59-1744, supra, repealing s. 4, Ch. 29438, supra, and amended by s. 1, Ch. 71-872, supra, provides that the rate of special assessments against taxable real estate within the district shall be fixed by a resolution of the board of commissioners. Section 8, Ch. 29438, provides that the proceeds of the special assessments and the funds of the district shall be deposited in a bank designated by a resolution of the board of commissioners. Finally, s. 11, Ch. 29438, provides that "[t]he Board of Commissioners may adopt such rules and regulations as it may deem necessary in and about the transaction of its business and in carrying out the provisions of this Act." Therefore, with the exception of fixing the rates of special assessments and designating the depository bank, the board of commissioners is directed by the district's enabling legislation to transact its business and carry out the provisions of such legislation by rule or regulation. This express direction necessarily precludes alternative modes (including the adoption of ordinances) of exercising district powers. Accord: Attorney General Opinion 074-49, in which it is stated that "the general authority to enact `rules and regulations' does not encompass the power to adopt and enforce ordinances." Your third question is answered in the negative. AS TO QUESTION 4: All of the official affairs of a local governmental unit must be transacted in substantially the manner prescribed by law. [See] 4 McQuillin, Municipal Corporations s. 13.07, p. 482. More particularly, the governing body of a local governmental unit may act only as a body at official meetings duly assembled, Turk v. Richard,47 So.2d 534, 544 (Fla. 1950); and rules of procedure established by legislative act or, in the absence thereof, by the governing body of the local governmental unit, must be followed. [See] 62 C.J.S. Municipal Corporations s. 400(a), p. 759. In the instant situation, s. 11, Ch. 29438, supra, provides the manner in which the district's business is to be conducted; accordingly, there must be substantial compliance therewith. Specifically, the district's board of commissioners is empowered to adopt "such rules and regulations as it may deem necessary in and about the transaction of its business and in carrying out the provisions of this Act." Section 11 also directs that a record be kept of all meetings of the board of commissioners and that a concurrence of a majority of the commissioners be necessary to any affirmative action by the board. AS TO QUESTION 4(a): Section 286.011(1), F. S., of the Government in the Sunshine Law provides as follows: All meetings of any board or commission of any state agency or authority or of any agency or authority of any county municipal corporation or any political subdivision, except as otherwise provided in the constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting. (Emphasis supplied.) This office has previously ruled in AGO 071-171 that a special district is within the purview of "political subdivision" as legislatively defined in s. 1.01(9), F. S., for the purposes of the Government in the Sunshine Law. Section 1.01(9) defines "public body," "body politic" and "political subdivision" to include "counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts and all other districts in this state." (Emphasis supplied.) In City of Miami v. Berns,245 So.2d 38, 40 (Fla. 1971), it was stated that the legislative intent in enacting the Government in the Sunshine Law was "to extend application of the `open meeting' concept so as to bind every `board or commission' of the state, or of any county or political subdivision over which it has dominion and control." See AGO 073-8, holding to same effect with respect to a mosquito control district. Likewise, in the instant situation, I am of the opinion that the meetings of the district's board of commissioners must be conducted in accordance with the requirements of the Government in the Sunshine Law. Question 4(a) is answered in the affirmative. AS TO QUESTION 4(b): Section 112.311, F.S., of the Standards of Conduct Law, declares the legislative intent to be that . . . no officer or employee of a state agency or of a county, city, or other political subdivision of the state . . . shall have any interest, financial or otherwise, direct or indirect, or engage in any business, transaction, or professional activity or incur any obligation of any nature which is in substantial conflict with the proper discharge of his duties in the public interest. (Emphasis supplied.) This office has recently ruled in AGO 074-159 that the Hillsborough County Aviation Authority, which is in effect a special taxing district, is within the purview of political subdivision as legislatively defined in s. 1.01(9), supra, for the purpose of the Standards of Conduct Law. See also AGO 073-160, in which it was stated that the members of a board of supervisors of a water control district are subject to the provisions of the Standards of Conduct Law. Likewise, in the instant situation, I am of the opinion that the members of the board of commissioners of the district are subject to the Standards of Conduct Law. Question 4(b) is answered in the affirmative. AS TO QUESTION 4(c): In AGO 074-7 it was stated that Absent a rule, regulation, statute or ordinance so requiring, a public body is not required unqualifiedly to award a contract to the lowest bidder. William A. Berbusse, Jr., Inc. v. North Broward Hospital District,117 So.2d 550 (2 D.C.A. Fla., 1960). Absent statutory requirements, a public body is not required unqualifiedly to purchase commodities on the basis of competitive bidding. See Attorney General Opinions 073-291 and 071- 366, and cases cited therein. That opinion went on to hold that the Captiva Erosion Prevention District is not required to take competitive bids on purchases and contracts. Compare AGO 074-89, in which it was held that an "independent special district" is a political subdivision within the purview of s. 1.01(9), supra, for the purposes of the Consultants Competitive Negotiation Act, s. 287.055, F.S. In the instant situation, the board of commissioners of the district is empowered to purchase "such fire fighting equipment as is deemed necessary for the protection of said District and to make and enter into contracts with firms and individuals, natural or corporate, relating to any and all purposes of the District." Section 10, Ch. 29438, supra. However, nowhere in Ch. 29438 or subsequent amending legislation is there a requirement expressed that the board of commissioners enter into contracts or purchase commodities on the basis of competitive bidding. Therefore, the board of commissioners is not required to do so. Question 4(c) is answered in the negative. AS TO QUESTION 4(d): As previously indicated, the business of a local governmental unit must be transacted according to law. However, where no rules of procedure are established by legislative act, the governing body of the local governmental unit may adopt reasonable rules of procedure. [See] 62 C.J.S. Municipal Corporations s. 400(a), p. 759. Thus, it is necessary to examine applicable legislative directions in order to determine the district's authority and accountability with respect to budgetary matters and procedure. Chapter 218, F.S., creates the Uniform Local Government Financial Management and Reporting Act, effective July 1, 1973 (Ch. 73-349, Laws of Florida). The words "unit of local government" are defined in the act to mean "a county, municipality, or special district" (Emphasis supplied.); s.218.31(1). "Special district" is defined as a "local unit of special government . . . created pursuant to general or special law for the purpose of performing prescribed specialized functions . . . within limited boundaries." Section 218.31(5). "Independent special district" is defined as "a special district whose governing head is an independent body, either appointed or elected, and whose budget is established independently of the local governing authority [the governing body of a county or municipality], even though there may be appropriation of funds generally available to a local governing authority involved." Section 218.31(7). In this regard, the district here involved was created pursuant to special law, Ch. 29438, supra, for the purpose of providing fire protection within the boundaries of the district. The district's board of commissioners is elected by a vote of the district electorate, s. 3, Ch. 29438, 1953, supra, and has the authority to adopt rules and regulations relating to the transaction of its business. Section 11, Ch. 29438. Thus, I am of the opinion that the district is an independent special district and a unit of local government within the purview of s. 218.31, supra. (See AGO 074-17, holding in part that the Cross Florida Navigation District and navigation districts created under Part III of Ch. 374, F.S., are units of local government within the purview of Ch. 218, supra.) As such, the district is subject to the following provisions of Ch. 218.
Section 218.32, supra, requires all units of local government to submit a copy of a financial report covering their operations during the preceding fiscal year to the Department of Banking and Finance, which shall prescribe the information to be contained in and the form of the required report. The fiscal year for all units of local government begins on October 1 and ends on September 30, s. 218.33(1), supra. The Department of Banking and Finance is empowered to promulgate rules and regulations regarding uniform accounting practices and procedures by units of local government, s. 218.33(2), supra. The appropriations for each fiscal year made by the governing body of each special district shall not exceed, in any one year, the amount to be received from taxation and other revenue sources, s. 218.34(1), supra. The proposed budget of an independent special district located solely within one county (the district here involved is located solely within Pinellas County) shall be filed with the clerk of the county governing authority by September 1 of each year, s. 218.34(3), supra. The local governing authority (in this instance, the Board of County Commissioners of Pinellas County) may, in its discretion, review and approve the budget or tax levy of any special district located solely within its boundaries, s. 218.34(4), supra. Finally, each special district is required to make provision for annual postaudit of its financial accounts in accordance with the rules of the Department of Banking and Finance, s. 218.34(5), supra. Other legislative directions which relate to the district's financial authority and accountability are found in Ch. 29438, supra. As noted above, s. 8 prohibits the board of commissioners from creating indebtedness or incurring obligations, with the exception of tax anticipation notes payable from special assessments, for any sum or amount which it is unable to pay out of district funds then in its hands. Section 9 prohibits use of district funds for purposes other than the administration of the district, the acquisition and maintenance of fire-fighting equipment, and the salaries of firemen. Section 11 empowers the district's board of commissioners to adopt rules and regulations necessary for the transaction of its business. See also s. 2, Ch. 71-872, supra, which establishes a building fund for a fire station. Section 13, Ch. 29438, supra, provides that the district's board of commissioners shall, on or before February 1, following, make an annual report of its actions and accounting of its funds as of December 31 of each year and shall file said report with the Board of County Commissioners of Pinellas County. However, s. 218.33(4), supra, provides that any provision of any special act which "prohibits or restricts a unit of local government from complying with this section or any rules or regulations promulgated hereunder is hereby nullified and repealed to the extent of such conflict." Thus, s. 13, Ch. 29438, to the extent it conflicts with the fiscal year provision, s.218.33(1), supra, must be considered modified. Moreover, since Ch. 218, supra, was enacted subsequent to Ch. 29438 and evidences a legislative intent to adopt uniform financial management and reporting procedures throughout the state, the same result should be reached with respect to the use of district funds to pay the expenses related to the completion and filing of the required financial report with the Department of Banking and Finance (compare s. 218.32(3) with s. 9, Ch. 29438) and any conflicts between budgetary rules and regulations promulgated by the district's board of commissioners pursuant to s. 11, Ch. 29438, and Department of Banking and Finance rules and regulations promulgated pursuant to s. 218.33(2). In sum, therefore, the district's board of commissioners may adopt budgetary rules and regulations not inconsistent with the requirements of Ch. 218, supra, or the rules and regulations of the Department of Banking and Finance promulgated pursuant thereto; and any provisions of Ch. 29438, supra, or subsequent amending legislation which conflict with the provisions of Ch. 218 should be considered nullified or repealed to the extent of the conflict. Specifically, the district's financial report should be filed with the Department of Banking and Finance, see s. 218.32, and its proposed budget with the Board of County Commissioners of Pinellas County for possible review and approval, see s. 218.34(3) and (4). Question 4(d) is answered accordingly. AS TO QUESTION 4(e): Section 119.01, F.S., of the Public Records Law, requires that all government records be open for a personal inspection of any citizen of Florida. "Public records" are defined in s. 119.011(1), id., as, generally, those records "made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." (Emphasis supplied.) "Agency" is defined as "any state, county or municipal officer, department, division, board, bureau, commission or other separate unit of government created or established by law." (Emphasis supplied.) Section119.011(2), id. The law does not define "separate unit of government." However, since counties and municipalities are specifically enumerated, they cannot be the "other" separate units of government to which s. 119.011(2) refers. Moreover, the Florida Supreme Court has previously characterized a special drainage district as "a governmental agency of the state for certain definite purposes, having such authority only as is delegated to it by law." Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 82 So. 346, 359 (Fla. 1919). I have also ruled above that the district here involved is a political subdivision within the purview of s. 1.01(9), supra, for the purposes of the Government in the Sunshine Law and the Standards of Conduct Law. Accord: Attorney General Opinions 071-171, 073-8, 073-160, and 074-159. See also AGO 074-89, in which it was held that an "independent special district" is a "political subdivision" within the purview of s. 1.01(9), supra, for the purposes of the Consultants Competitive Negotiation Act, s.287.055, supra. Likewise, in the instant situation, the district is a governmental agency of the state created by Ch. 29438, supra, for the purpose of fire protection within the district's boundaries. As such, I am of the opinion that the district is a "separate unit of government created or established by law," and that its records are public records within the purview of the Public Records Law. Question 4(e) is answered in the affirmative. AS TO QUESTION 5: Your fifth question is broadly phrased, and, therefore, can only be broadly answered. Thus, I will not attempt to describe individual civil or criminal liability with respect to any specific acts of public officials. However, it may be generally stated that a public official must account for all public funds which come into his hands and that such official may be liable as an insurer for the loss of such funds. [See] 62 C.J.S. Municipal Corporations s. 546, p. 1016; 26 Fla. Jur. Public Officers s. 128, p. 265. In addition, a public official may be criminally liable for omitting to perform a ministerial duty imposed on that official by law (nonfeasance or neglect of duty), or for performing acts which are forbidden by law (malfeasance). [See] 62 C.J.S. Municipal Corporations s. 549, p. 1026. An offense of the latter type may arise through a breach of either common law or statutory proscriptions. For example, a public official may be guilty of a breach of common law and statutory prohibition if he awards a public contract in which he has a private interest. See City of Miami v. Benson, 63 So.2d 96 (Fla. 1953); s. 839.08, F.S. Moreover, willful or corrupt performance or omission of a discretionary duty and other misconduct or malfeasance in office may be indictable as a common law or statutory offense. [See] 5 McQuillin, Municipal Corporations s. 12.228a, p. 210; Ex parte Amos, 112 So. 289, 296 (Fla. 1927); s. 839.11, supra. Criminal liability may also be imposed on a public official for such offenses as embezzlement, s. 812.10, F.S., see Haslett v. State,225 So.2d 186 (2 D.C.A. Fla., 1969); fraud, State v. Coleman,166 So. 221 (Fla. 1936); and extortion, s. 839.11, supra, Ford v. State, 251 So.2d 562 (3 D.C.A. Fla., 1971). Finally, there are criminal penalties for violation of the Government in the Sunshine Law, s. 286.041(2), supra; the Standards of Conduct Law, s.112.317, supra; and the Public Records Law, ss. 119.02 and 119.10, supra. AS TO QUESTION 6: Section 8, Ch. 29438, supra, requires the proceeds of special assessments levied by the district and the funds of the district to be deposited in a bank authorized to receive deposits of county funds. (See Ch. 136, F.S., as to depositories of county funds.) Chapter 29438 does not authorize or require the district's board of commissioners to invest district funds. However, s. 665.321, F.S., of the Savings Association Act, authorizes certain persons, organizations, and public entities, including "municipalities and other public corporations and bodies" (Emphasis supplied.), to invest funds held by them in savings accounts of savings associations which are under state supervision, and in accounts of federal associations organized under the laws of the United States and under Federal supervision, in the circumstances therein prescribed. See also Ch. 518, F.S., authorizing political subdivisions and public bodies, among others, to invest their funds in various types of securities. As previously indicated, "public body" is defined in s. 1.01(9), supra, to include "all other districts in this state," and I am of the opinion that the context of s. 665.321, supra, permits the application of such definition. Accord: Attorney General Opinion 056-76, ruling that drainage district funds could be invested in share accounts of federal savings and loan associations. Cf. AGO 072-26, holding that savings accounts in state and federal savings and loan associations are legal investments of county and school board funds; AGO 057-120, ruling that housing bonds are authorized securities for securing deposits of county and school board funds. Accordingly, you are advised that the district's funds may be invested in accordance with the provisions of statutes providing for the investment of the funds of public bodies or political subdivisions of the state, although there is no statutory requirement that this be done. AS TO QUESTION 7: Section 7, Ch. 70-905, Laws of Florida, repeals Ch. 29439, 1953, id., and all other conflicting laws. Both Ch. 29439 and Ch. 70-905 relate to the establishment and maintenance of fire control districts in the unincorporated areas of Pinellas County. Such fire control districts may be created by the filing of petitions with the Board of County Commissioners of Pinellas County and the holding of referendums within the proposed districts. In contrast, the district here involved, as created by Ch. 29438, 1953, id., encompasses a definite prescribed area, including incorporated as well as unincorporated areas. See ss. 1 and 3, Ch. 29438. Moreover, the state legislature, subsequent to the enactment of Ch. 70-905, amended Ch. 59-1744, id. (which amended Ch. 29438), to provide for the creation of a building fund out of the district's annual assessments, thereby recognizing that the district continued to exist separate and apart from the fire control districts authorized by Ch. 70-905. Chapter 71-872, id. Thus, I am of the opinion that Ch. 70-905 has no effect on the provisions of Ch. 29438 or the district.