QUESTION: Are purchases of utilities by a church when said utilities are used for Sunday School services, vacation bible school, and church day schools exempt from municipal public service tax pursuant to s. 166.231(4), F. S. (1974 Supp.)?
SUMMARY: Purchases of utilities by a church when said utilities are used for Sunday School services and vacation bible school are exempt from municipal public service tax pursuant to s.166.231(4), F. S. (1974 Supp.), since these activities directly or primarily further the religious purposes of the congregation even though said activities may serve incidental nonreligious purposes. Purchases of utilities by a church when said utilities are used for church day schools are exempt from said municipal public service tax if the church conducts day schools in the area of church-owned property for the purpose of caring for children of working parents and if the church utilizes any excess funds derived from the operation of said schools to further church or religious purposes. Your question is answered in the affirmative as discussed herein. Section 166.231(4), F. S. (1974 Supp.), states: A municipality may exempt from taxation hereunder the purchase of the taxable items by the United States Government, the State of Florida, or any other public body as defined in s. 1.01, and shall exempt [purchases by] any recognized church in this state for use exclusively for church purposes. (Emphasis supplied.) This statute was considered by the Supreme Court of Florida in Dickinson v. City of Tallahassee, Case No. 46,580 (Fla. Sup. Ct., filed Dec. 10, 1975), in determining that the State of Florida and its agencies and departments, Leon County, and the Leon County School Board were immune from the 10 percent utility tax levied by the City of Tallahassee, since neither s. 9(a), Art. VII, State Const., the authorizing constitutional provision, nor s. 166.231(1) and (4), F. S. (1974 Supp.), the implementing statute, constituted a waiver of that immunity. The Supreme Court reached this decision even though the language of the statute is permissive. An examination of this case reveals that the court did not consider the questions presented by your inquiry. Initially, it must be noted that your enclosed letter dated April 30, 1973, from Henry E. Williams, Jr., City Attorney of Tampa, to Melvin B. Smith, City Comptroller of Tampa, defining the word "church" to mean "only the church proper and not the broader nonprofit religious institution carrying on its customary religious activities," was based upon Ch. 72-721, Laws of Florida, which amended Ch. 167, F. S., by creating a new section providing the following:
Exemption of churches, utility tax. — All churches that are entitled to exemption from the state sales and use tax law shall be exempt from the payment of any municipal tax on utility services as defined in section 167.431, Florida Statutes, furnished to church property used exclusively for church purposes. Chapter 167, supra, was subsequently repealed by the Legislature. Chapter 73-129, Laws of Florida, effective October 1, 1973, states: AN ACT relating to local government . . . repealing chapters 166, 167 . . . Florida Statutes, and all existing sections thereof not otherwise transferred . . . . Section 5(1) of Ch. 73-129, supra, specifically states: Except as otherwise provided in sections 2 and 3, the following enumerated chapters of Florida Statutes, and all sections thereof as presently constituted, relating to powers of local officials, are repealed: chapter 167 (sections 167.005 through 167.78, inclusive) . . . . Sections 2 and 3 of Ch. 73-129, supra, did not transfer s. 167.431, F. S., but said Ch. 73-129 did create the above-quoted s.166.231(4), supra, which deletes that portion of s. 167.431 entitling a church to exemption from municipal tax on utility services furnished to church property used exclusively for church purposes if a church is entitled to exemption from state sales and use tax pursuant to Ch. 212, F. S. Therefore, City Attorney Williams' letter is no longer relevant to the question sub judice. Therefore, the instant issue must be resolved by construing the clause, "for use exclusively for church purposes," as contained in s. 166.231(4), supra. Under the statute, it is the use to which the utility is put which is determinative of its exempt status and this is consistent with other Florida statutory and case law regarding exemptions. [See Maxwell v. Good Samaritan Hospital Association, 161 So.2d 31 (2 D.C.A. Fla., 1964); State v. Doss,8 So.2d 15 (Fla. 1942); Lummus v. Florida Adirondack School,168 So. 253 (Fla. 1934); AGO's 046-369 and 063-138; ss. 196.195, 196.196,196.197, 196.198, and 196.199, F. S.] This phrase has been construed previously to mean that a nonreligious, incidental use of property does not prevent the granting of an exemption. 15A Words and Phrases Exclusively for Religious Purpose p. 199 (1950). The phrase "exclusively used" has reference to a primary use as opposed to a mere secondary and incidental use. 15 Words and Phrases Exclusively Used p. 201 (1950). Incidental purposes do not effect a change in the purpose for which property is held and used, as long as the primary use of such property is to further religious purposes. Jasper v. Mease Manor, Inc., 208 So.2d 821
(Fla. 1968). Applying the above definition, courts have previously held that the fact that a building, occupied by a church for church services at stated times, is rented for lectures, concerts, and readings, and the rent from such entertainments is used to defray the expenses of the church and society, does not prevent the use of the building by the church from being its exclusive occupation pursuant to a statute exempting from taxation all buildings exclusively occupied as churches, First Unitarian Society of Hartford v. Town of Hartford, 34 A. 89 (Conn. 1895); that earning one's livelihood or performing certain incidental services does not convert property otherwise used exclusively for religious purposes into property which is not used for said purposes, Lummus v. Florida Adirondack School, supra; that use of church-owned property as a parking lot for parishioners attending church services, although said parking lot was used as a commercial parking area during weekdays, serves a religious purpose, Central Baptist Church of Miami v. Dade County,216 So.2d 4 (Fla. 1968), rev'd on other grounds, 404 U.S. 412 (1972). In the latter case, the Central Baptist Church of Miami, Florida, Inc., owned a city block in downtown Miami on which its church building was located. A large portion of the lot, 59 percent, was utilized as a parking area. During the weekday business hours, this area, with the exception of a small part reserved at all times for the church staff, was rented for and used as a commercial parking lot, the net income from which was devoted in its entirety to world missions and educational programs of the church. On Sundays and evenings the parking area served as a gratuitous parking facility for the congregation during hours of church services and church-related activities. The Supreme Court of Florida, in construing s. 192.06, F. S. 1967, which stated in part: 192.06 Property exempt from taxation. — The following property shall be exempt from taxation: * * * * * (4) All houses of public worship and lots on which they are situated, and all pews or steps and furniture therein, every parsonage and all burying grounds not owned or held by individuals or corporations for speculative purposes, tombs and right of burial; but any building being a house of worship which shall be rented or hired for any other purpose except for schools or places of worship, shall be taxed the same as any other property. determined that the church property was exempt from ad valorem taxation when said property was used for religious purposes and that the limited part-time rental of a portion of the church lot for commercial parking during weekday business hours was reasonably incidental to the primary use of the church property for religious purposes and was not a sufficiently divergent commercial use to eliminate the exemption. Central Baptist Church of Miami v. Dade County, supra. At p. 6, the Supreme Court specifically stated: . . . [I]t does not appear that the Legislature intended by the language of Section 192.06(4) to remove the church property tax exemption where the rental of a portion of a church lot is limited in nature and does not result in the portion rented being placed beyond its regular and customary church use, and the rental funds derived are used for purposes contemplated by Section 16, Article XVI, State Constitution. The legislative wisdom and policy of the statute are that if certain church related property (parsonages and burying grounds) is held by private persons for speculative purposes or if the house of worship itself is rented for a nonworship or nonschool purpose, these are diversions from church use sufficient in degree to warrant lifting the tax exemption. However, lesser and more limited divergent uses of church property are apparently not deemed by the Legislature sufficiently inconsistent with church purposes to lift the exemption, provided the funds derived from such uses are not diverted to purposes not contemplated by Section 16, Article XVI. (Emphasis supplied.) Emphasizing that each individual situation must be examined on its own merits to determine factually whether the organization and the activity are exempt from taxation, my predecessor, in response to the question of whether the word "exclusively" in s. 166.231(4), supra, permitted the exemption from municipal public service tax to be applied to church purchases for nonprofit church properties and operations such as schools, clinics, recreation areas, playgrounds, convents, and rectories restated the interpretation of the clause "exclusively for church purposes" as follows, which I quoted in AGO 075-209: . . . [T]he term "used exclusively for church purposes" has a broader meaning than the use of the church auditorium for Sunday sermons or preaching services, but extends to such services as the Sunday school services, the young people's Sunday services in the church, and other services in the church directly furthering the religious purposes of the congregation. [Attorney General Opinion 057-255; emphasis supplied.] Applying this interpretation to the above-quoted issue, my predecessor determined that the exemption from municipal public service tax does not apply to church purchases for nonprofit church properties and activities such as schools, clinics, recreation areas, etc., unless the activity constitutes a direct adjunct of the church and its congregation, i.e., a parsonage, whether or not physically located on church premises, furnished to the minister without cost of any nature (including cost of utility services). Attorney General Opinion 075-209. Applying these requirements to your particular question, it is clear that the operation of Sunday School services and vacation bible schools on church property falls within the exemption granted by s. 166.231(4), supra. Both further religious purposes, such as teaching stories from the Bible. However, the application of the above-stated requirements to the operation of church day schools presents a more complicated issue. It is common knowledge that many churches operate day schools on church premises for the purpose of caring for children of working parents. Thus, utilities used in operating such schools are used in the area of the church property where said schools are operated during the period of operation. Additionally, it is presumed that any excess funds derived from the operation of day schools are used to further church or religious purposes. The above-described situation would then be quite similar to that before the Florida Supreme Court in the Central Baptist case wherein the parking area was rented during weekday business hours, with proceeds from such rentals used for religious or educational purposes. Therefore, it would appear that utilities purchased for use in day schools located on church premises would come within the exemption granted in s. 166.231(4), supra, provided the funds derived therefrom were used for religious purposes and not diverted to other uses. If church property, used and operated as a commercial parking lot during the week, was found to meet the test of "exclusive use" for tax exemption purposes, then the same should be true of a day school operated on the church premises by the church, provided no diversion of funds to nonreligious purposes or uses occurred. However, it must be emphasized that each individual situation must be examined on its own merits to determine factually whether the organization and the activity meet the above-stated requirements.